**FILED**

MAR 09 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Mark Whitney
3558 Round Barn Blvd Ste 200
2  Santa Rosa, CA 95403
707 387 1040
3  mark@whitneyhomes.com

4
PRO SE
5

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11  Timothy and Patricia Peden          )  Case No.: 3:26-cv-00013-LB
12                                       )
              Plaintiffs                 )  ANSWER TO COMPLAINT
13                                       )
         vs.                             )  1) THEFT (PENAL CODE 484b)
14                                       )  2) FRAUDULENT
    Mark Whitney d/b/a Whitney Homes     )     MISREPRESENTATION
15                                       )  3) FRAUDULENT CONCEALMENT
                                         )  4) STATUTORY FRAUD
16            Defendants                 )  5) VIOLATION OF CONSUMERS
                                         )     LEGAL REMEDIES ACT
17                                       )  6) UNFAIR BUSINESS PRACTICES
                                         )  7) CIVIL RICO (18 U.S.C. 1962 C)
18                                       )  8) MONEY HAD AND
                                         )     RECEIVED/UNJUST ENRICHMENT
19                                       )  9) DECLARATORY RELIEF AND
                                         )     RESTITUTION
20
                                         Dept:
21                                       Judge:

22  _____

23

24

25

26

27

28

                              - 1 -
              INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

Defendant, Mark Whitney d/b/a Whitney Homes answers Plaintiffs complaint:

## INTRODUCTION

**1.** Defendant denies paragraph 4 through 8.

Peden approved 18 different work orders from planning, design & construction agreements starting April 4, 2023, and ending December 3, 2025. Whitney never engaged in any of the Plaintiffs' accusations.

**2.** Defendant denies paragraph 9 through 11.

Whitney records will show all approved work orders; payments received to date on account and Plaintiffs remaining financial commitments to the project of over 140K. Peden had 24/7 online access to all accounting records, work order approvals and any agreed scope of work starting from day one April 4, 2023.

## JURISDICTION AND VENUE

**3.** Defendant denies paragraph 13 through 14.

This is a construction breach of contract issue by Peden and Plaintiffs have failed to properly allege a claim arising under RICO, 18 U.S.C. §§ 1961-1964. The proper venue should be Sonoma County Superior Court. All parties involved with this construction project live and work in this county.

**4.** Defendant denies paragraph 15 through 19.

Whitney however admits the Court has original jurisdiction over the federal RICO claim but denies the state-law claims arise from the same nucleus of operative fact as the federal claim. Defendant further denies that the state-law claims form part of the same case or controversy under Article III. or that they are so related as to be part of the same case or controversy, as they involve different evidence and legal theories.

**5.** Defendant denies paragraph 20 through 21.

Whitney denies that the state-law claims arise from a common nucleus of operative fact and therefore denies that supplemental jurisdiction is appropriate.

**6.** Defendant admits and denies paragraph 22 through 23.

Whitney admits that it transacts business in Sonoma County but denies that venue is proper

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1   for this construction dispute.

2   **7.** Defendant denies paragraph 24 through 27.

3   Whitney denies any wrongdoing and proposes a different more appropriate venue where

4   defendant lives, where the contract was performed in Sonoma County, California.

5   **PARTIES**

6   **8.** Defendant admits paragraph 2 through 3.

7   **9.** Defendant admits paragraph 4 through 7.

8   **10.** Defendant admits and denies paragraph 8 through 11.

9   Whitney admits operating business in Sonoma County but denies operating interstate

10  banking and credit card systems. Whitney uses a third-party vendor called BuilderTrend to

11  track all cost, work orders and accounting of a project. Peden had 24/7 online access to this

12  system for complete viewing.

13  **FACTUAL ALLEGATIONS**

14  **A. The Pre-Construction Phase**

15  **11.** Defendant admits and denies paragraph 14 through 16.

16  On April 4, 2023, Whitney and Peden entered into a written agreement for pre-construction

17  services only. Engineering costs were separate. The agreed amount was 7500.

18  **12.** Defendant denies paragraph 17 through 22.

19  The complete design scope of work was not clearly defined until the year 2025. The

20  designer waited patiently for Peden answers, sometimes taking months.

21  **13.** Defendant admits and denies paragraph 23 through 25.

22  Whitney admits the pre-construction agreement did not authorize Whitney to construct the

23  retaining wall and denies receiving construction progress payments prior to the execution of

24  the construction agreement.

25  **14.** Defendant denies and admits paragraph 26 through 28

26  All services by Whitney designers were acceptable and professional and approved by the

27  County of Sonoma for construction. Whitney admits Peden has no damage arising from

28  the pre-construction agreement.

**B. Failed Negotiation for a Written Construction Contract**

**15.** Defendant lacks information paragraph 2 through 6.

**16.** Defendant admits paragraph 7 through 10.

Peden is a California attorney and was seeking to change the standard form construction agreement terms and conditions to favor Peden

**C.  Construction Phase Commenced Based on Incremental Change Orders**

**17.** Defendant denies paragraph 12 through 15 and lacks information paragraph 15 through 19.

**18.** Defendant denies paragraph 20 through 25.

Whitney did secure written approval from Peden to proceed with construction on March 1, 2025.

**19.** Defendant denies paragraphs 26 through 28 and paragraph 1 through 8.

In an everyday course of business, Whitney selects crews for various reasons. From schedule, cost and many other factors. The approved construction agreement was a fixed cost based on drawings and specifications at that time. Whitney did not make any false statements as Peden have asserted.

**20.** Defendant denies paragraph 9 through 12.

Peden had 24/7 online access to our construction project management system BuilderTrend for viewing all work orders and cost.

**21.** Defendant admits paragraphs 13 through 14 and denies paragraph 15 through 17.

Whitney attempted to have Peden sign off on a construction agreement, but they refused leaving Whitney no choice but to receive some type of written approval by presenting individual change orders with scope of work. This is outlined in our project accounting report and was available to Peden at all times.

**22.** Defendant denies paragraph 18 through 24.

Whitney received no advance payments but progress payments for the overall project.

Whitney is certainly entitled to project management, supervision, overhead and profit.

A complete accounting of the project was shared with Peden since 2023 and Peden had full online access 24/7.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

### D.  Whitney's Fraudulent "Draw" Payment Demands

**23.** Defendant denies paragraphs 26 through 28 and 1 through 1.

Whitney received no "advance" payments only progress payments for on-going construction activities. All reporting was always available to Peden.

**24.** Defendant denies paragraph 2 through 10.

Whitney never made demands on Peden for progress payments. This was a complete voluntary action. Peden needed to clearly initiate payments to Whitney. Peden, being a California attorney, was certainly aware of the laws mandating licensed contractors and at no time did Whitney exploit Peden but was always available to help.

**25.** Defendant denies paragraph 11 through 16 as written but admits receiving three separate progress payments.

Progress draw # 1 of 50,000 received 2025.03.19

Progress draw # 2 of 10,000 received 2025.04.25

Progress draw # 3 of 5, 000 received 2025.05.17

**26.** Defendant denies paragraph 17 through 23.

Whitney never concealed the accounting of the project to Peden. This was open to Peden 24/7 since 2023. What Peden is failing to tell is Whitney completed 16 of 18 approved work orders and was stopped in the middle of the last 2.

**27.** Defendant denies paragraph 24 through 27.

Whitney made every attempt to meet with Peden, but they refused. Whitney spent a good part of over 2 years preparing for this project and is certainly entitled to money received and earned. The project scope has changed substantially and the means and methods to complete work safely as well.

### E.  Whitney's Fraudulent Invoicing and Diversion of Third-Party Payments

**28.** Defendant denies paragraph 2 through 5.

Whitney used the accounting software program BuilderTrend to track all work orders, and progress payments on Peden account. This information was available to Peden 24/7 for review anytime. Progress payments were not specific to a vendor but to the overall project

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1    cost. Our records show at time of termination a balance that exceeded 140K, which
2    represented over 80% of the original construction agreement. Whitney believes the
3    disconnect between Whitney and Peden is a simple one. Whitney looks at the overall cost
4    of the project while Peden is looking at each individual invoice. The construction
5    agreement was never represented to Peden as a cost-plus project but a fixed agreement. We
6    do have Peden signature of approval. Whitney shared various invoices with Peden for
7    complete transparency on additional work orders to help them understand the true cost of
8    the work.
9    **29.** Defendant denies paragraph 6 through 28 and 1 through 23.
10    Peden is failing to inform the court payments made on account are recorded for the overall
11    cost of the project not specific invoices or vendors.
12        a.  RGH:
13            Peden was issued a full credit memo (CM) for this vendor. Peden also has paid direct
14            to this vendor for other change order work directed by Whitney. Peden has refused to
15            sign off on overhead or profit for Whitney related to RGH services.
16        b.  Hogan:
17            Whitney has no open invoices with this vendor.
18        c.  Cordoza:
19            Whitney has one open invoice of 2000 with this vendor.
20            During course of construction, it was brought to the attention of Whitney that
21            Cordoza may have hit the main water supply to the home. As a normal course of
22            business. Whitney held back funds until such time this was resolved with Peden.
23            Cordoza scope of work was just over 5000 and Whitney earned no overhead or
24            profit. This was to simply help Peden remove a tree and stump from the hillside of
25            property. Peden already sued another tree contractor for various other work so they
26            asked if Whitney could help.
27        d.  Delta Rebar:
28            Whitney secured and ordered this product for the newly revised foundation piers

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1    but never received it on site. Peden terminated Whitney just before required on site.

2  **30.** Defendant denies paragraph 24 through 26.

3    Whitney owed very little to vendors at termination and Peden was committed to an

4    additional 140K to Whitney. Whitney now knows the reason behind termination. It was

5    simply not to pay project management, supervision, overhead or profit to Whitney.

6  **31.** Defendant denies paragraph 27 through 28 and 1 through 4.

7    Whitney uses a third-party vendor BuilderTrend a construction software program for

8    builders to track the accounting and various aspects of a project. This is not by any means a

9    scheme as Attorney Peden may suggest.

10  **32.** Defendant denies paragraph 5 through 7.

11    Attorney Peden accusations are 100% untrue. Our project accounting summary has always

12    been open for review since 2023.

13  **F.  The Pedens Discover Whitney's Theft and Fraud**

14  **33.** Defendant denies paragraph 9 through 20.

15    The Buildertrend accounting system only generates an invoice upon prior written approval.

16    At no time from the year 2023 did Whitney ever ask for full payment on services. When

17    payment is made on an account the system updates the records. This also gives Whitney a

18    view of the overall project cost and percentages that are still due. This was an on-going

19    design build project, and progress payments have always been a part of the construction

20    industry. Our reporting will show a CM issued to Peden for RGH services. This amount

21    was 7700 not 9840 as Peden has written.

22  **34.** Defendant denies paragraph 21 through 28.

23    It's not uncommon for a builder to have a few open invoices during a design build project.

24    Attorney Peden seems to be focusing on the idea of two or three invoices over a course of 2

25    plus years but not informing the court of their financial commitments made to Whitney.

26  **35.** Defendant denies paragraph 1 through 9.

27    Whitney has no open invoice with Hogan.

28  **36.** Defendant lacks information paragraph 10 through 17.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1    Whitney has an open invoice of 2000 with Cordoza.

2    **37.** Defendant denies paragraph 18 through 28 and 1 through 4.

3    Peden was always aware of the vendor Delta Rebar and cost associated with this CO. This

4    was one line item only not the entire approved CO for $ 30,308.00.

5    **G. Whitney Refund to Provide An Accounting And Continues to Demand Money**

6    **38.** Defendant denies paragraph 6 through 15.

7    Our accounting system has always been available to Attorney Peden 24/.7 since the year

8    2023. Peden focus is more on two or three small invoices over a course of 2 + years and not

9    the overall commitment made that still showed 140K upon termination. What is not being

10    shared by Peden is Whitney completed 16 of 18 work orders and was in the middle of the

11    last two upon termination.

12    **39.** Defendant denies paragraph 16 through 20.

13    At all times for years Peden had access to the BuilderTrend accounting records for the

14    project.

15    **40.** Defendant denies paragraph 21 through 23.

16    Whitney provided an open book to all vendors online in the BuilderTrend platform.

17    **41.** Defendant denies paragraph 24 through 27.

18    Attorney Peden had a history of not signing off on work orders for years. One took over 17

19    months. Whitney never over the course of this project threatened to put the project on hold.

20    42 Defendant denies paragraphs 28 and paragraph 1 through 2.

21    The BuilderTrend accounting system has been provided to Peden since day one. It's very

22    clear and 99% of our customer base love this tool.

23    43 Defendant denies paragraph 3 through 10.

24    Whitney has always shared all required information with Peden to make informed decisions

25    on the project. Whitney gave Peden 24/7 access to the accounting summary, approved work

26    orders and any updates to the project. Whitney did not receive advance draws. Peden may be

27    missing the fact Whitney is entitled to project management, supervision, overhead and profit

28

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1  on each work order. Whitney had a very good track record of completing 16 of 18 work

2  orders to date and was in the middle of the last two upon termination.

3  44 Defendant denies paragraph 11 through 14.

4  Whitney does not engage in fraudulent practices. The BuilderTrend system is very clear and

5  was available to Peden 24/7 with all project updates.

6  ### H. "Termination And Demand for Return of Funds

7  45 Defendant admits paragraph 16 and denies paragraph 17 through 19.

8  Whitney did receive a letter of termination of services on December 3, 2025. Prior to

9  termination, Whitney informed Peden of the rising cost to complete the revised scope of

10  work due to the existing hillside conditions.

11  46 Defendant denies paragraph 20 through 22.

12  Whitney had completed a substantial amount of work on the hillside, ready for foundation

13  and piers only to receive an email from Attorney Peden to stop work the night before.

14  47 Whitney completed 16 of 18 work orders prior to termination and has earned all money

15  disbursements received. Peden was still holding 140K for the last two remaining agreed

16  items. Given the opportunity, Whitney would have completed the last two items and

17  received the additional funds held. Whitney believes Peden has breached agreements and

18  now has hired the same crew that were on site for Whitney.

19  48 Defendant denies paragraphs 26 through 28 and 1 through 1.

20  Whitney has shown Peden for two + solid years the accounting updates to this project.

21  Peden had an outstanding balance on account commitments that exceeded 80% of the

22  original agreement. Whitney looks at the overall project cost and keeps in line with

23  percentage of completion, not each individual invoice or vendor during course of

24  construction.

25  49 Defendant denies paragraph 2 through 4.

26  Whitney conduct was always professional, fair and more than reasonable. Whitney set time

27  aside specifically to complete all required approved work orders. Payments received were

28  never specific to one vendor or another but to the overall financial requirements of the

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1    entire project.

2    50  Defendant lacks information paragraph 5 through 8.

3    Peden made the decision to terminate Whitney services without cause. Having a few

4    open invoices on a design build project over the course of several years is not a valid

5    reason. Peden continued to refuse Whitney requests to sit down and resolve any type of

6    accounting differences. Whitney believes Attorney Peden had a prior agenda.

7                          **CAUSES OF ACTION**

8                        **FIRST CAUSE OF ACTION**

9              (Diversion of Construction Funds – Penal Code § 484b)

10   51  Defendant incorporates answers by reference paragraphs 1 through 50 as though fully set

11   forth here.

12   52  Whitney denies paragraph 13 through 15.

13   Whitney did receive progress payments on work performed over a 3-year period but not for

14   specific purposes as outlined by Plaintiffs. The true correct project numbers prior to

15   termination are as follows:

16   Project Running Total:          257,592.53.

17   Applied Credit Memos:             2,900.00

18   Less Payments Received:         129,684.53

19   Remaining Balance:              125,008.00

20   Additional Approved CO's:         15,662

21   Total Approved Balance:         140,670.00

22   53  Whitney denies paragraph 16 through 17.

23   Whitney received a total amount of 129, 684.53 for the overall project cost not specific to

24   any third-party vendor. Peden was always aware of our reporting and had online access to

25   view 24/7 for over 3 years.

26   54  Whitney denies paragraph 18 through 21.

27   At no time did Whitney willfully divert funds. Whitney is entitled to project management,

28   supervision, overhead and profit for any project undertaken including but not limited to

1    the sale of home improvement services.

2    55. Whitney denies paragraph 22 through 24.

3        Whitney completed 16 of 18 approved tasks over the course of 3 years working with Peden

4        leaving an approved balance at termination of 140,670. This represented over 80% of the

5        original construction agreement, still outstanding. Whitney, like all general contractors, has

6        operating expenses for each project and did not use funds for personal benefits.

7    56. Whitney denies paragraph 25 through 27.

8        Whitney conduct always was professional, courtesy and always available to Peden. The

9        funds received to date were earned by Whitney. It only represented 20% of the original

10       approved construction agreement. Peden was the party that terminated Whitney services

11       before we could complete the last two remaining tasks.

12   57. Whitney denies paragraph 28 and 1 through 2.

13       At no time did Whitney intentional commit any wrongdoing. Given the opportunity,

14       Whitney would have completed the last two items approved by Peden and earned the

15       balance of the agreement that exceeded 140K.

16   58. Whitney denies paragraph 3 through 5.

17       Peden is not entitled to any restitution for their own breach of agreement. Whitney was

18       always willing, able and ready to complete the remaining two approved tasks but was

19       terminated in Whitney's opinion without cause. Attorney Peden throughout the years was

20       not very cooperative. From trying to change terms and conditions of a standard construction

21       agreement to now making false accusations. The truth is that Peden terminated Whitney

22       services for one reason only. To avoid paying future project management, supervision,

23       overhead and profit to Whitney. Peden is now using the same excavation contractor Whitney

24       hired for the project.

**SECOND CAUSE OF ACTION**

(Fraud – Intentional Misrepresentation)

27   59. Defendant incorporate by reference paragraphs 1 through 58 as though fully set forth here.

28   60. Defendant denies paragraph 9 through 12.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

Whitney did not misrepresent any part of the project including the on-going accounting that was available to Peden 24/7 for 3 years.

61. Defendant denies paragraph 13 through 18.

Whitney has admitted to nothing when it comes to Peden accusations.

62. Defendant denies paragraph 19 through 21.

Whitney accounting was open to Peden for review online for 3 years. The project cost summary was always provided to Peden for review and questions. It's not unusual for a builder to have open invoices during course of a design build project having an accounting balance that exceeding 140K.

63. Defendant denies paragraph 22 through 25.

Whitney did not misrepresent any of the 18 different approved agreements made with Peden. over the course of 3 years. After all, Whitney still had 140K of revenues coming from the project before Peden made the decision to terminate Whitney services.

64. Defendant lacks information paragraphs 26 through 28.

Whitney has no knowledge of Peden construction experience but certainly knows Peden is a California attorney. All work orders were approved and signed by Peden and completely 100% legitimate.

65. Defendant denies paragraph 2 through 5.

Whitney completed 16 of 18 signed agreements before termination by Peden. Whitney is deserving of funds received to date. It is Peden breach of agreements that has brought us to this point. Peden refused more than once to sit down with Whitney to resolve any differences. Peden told Whitney they were running out of funds which leads Whitney to believe they would like free services from Whitney.

66. Defendant denies paragraph 6 through 9.

Whitney conduct was professional and at no time violated California statutes. It was Peden refusal on many occasions throughout the design build process to cooperate with Whitney. Peden is not entitled to an award of punitive damages, attorney fees and cost of suit for their own breach of agreements.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

**THIRD CAUSE OF ACTION**

(Fraudulent Concealment / Nondisclosure)

67. Defendant incorporate by reference paragraphs 1 through 66 as though fully set forth here.

68. Defendant denies paragraph 11 through 16.

Whitney accounting records will show at time of termination by Peden a very large gap between Peden financial obligations to the project and any Whitney open invoices.

69. Defendant denies paragraph 17 through 20

Whitney provided complete transparency 24/7 online to Peden. Summary accounting reports were available anytime to view in the BuilderTrend owners portal.

70. Defendant denies paragraph 21 through 28.

Whitney never concealed any material facts.

1. This was an on-going design build project. It's not unusual to have some open invoices during course of the work.

2. Whitney did not falsely blame third-party vendors.

3. Whitney gave access to accounting records to Peden 24/7.

4. Whitney had no issue with any provider services.

5. Whitney is entitled to receive project management, supervision, overhead and profit along with other general condition cost. The construction agreement was a fixed cost agreement not requiring Whitney to share every single document to complete the agreed scope of work. Whitney did not misuse funds received to date from Peden.

71, Defendant lacks information paragraph 1 through 3.

In all agreements with Peden, Whitney was acting in good faith.

72. Defendant denies paragraph 4 through 7.

All accounting for this project was available 24/7 to Peden. A summary of open and closed work orders were provided to view anytime. Peden suffered no damage from Whitney.

73. Defendant denies paragraph 8 through 9.

Whitney never demonstrated over a 3-year period to have intentional or malicious conduct. only to be very helpful in all business transactions.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

**FOURTH CAUSE OF ACTION**

(Statutory Fraud – Business and Professions Code § 7160)

74. Defendant incorporate by reference paragraphs 1 through 73 as though fully set forth here.

75. Defendant admits paragraphs 13 through 15.

76. Defendant denies paragraphs 16 through 23.

Whitney made no false statements over a course of 3 years or "induced" Peden to move forward with this design-build project. All agreements, change orders, proposals, invoices and accounting are 100% legitimate and available for 24/7 online viewing. Money received to date was not specific to one invoice but to the overall project cost with a balance that exceeded 140K upon termination.

77. Defendant denies paragraphs 24 through 28.

Whitney made no false statements and received progress payments over the course of 3 years. Peden may not realize what a design build project encompasses. Work in the office is just as important if not more than work in the field. Peden accusations are unfair and untrue.

78. Defendant denies paragraphs 1 through 5.

Whitney made no false statements or representation over the course of 3 years. The home improvement agreement was available for signature of approval from Peden, but attorney Peden wanted to change the terms and conditions of the agreement to favor Peden. Our accounting records will speak for themselves. A complete detailed list of written signatures of approvals from Peden. Money disbursements were progress payments received over a 3-year period but not specific to one invoice or another as Peden may suggest.

79. Defendant denies paragraphs 6 through 12.

Peden is a California attorney. Whitney serious doubts you can "induced" someone of that education. Peden stopped the project from moving forward not Whitney. Whitney was always available, willing and able to continue to completion. Money received has been earned. The decision to terminate Whitney was solely on Peden. Peden made no

1  effort to sit down with Whitney to resolve this construction dispute but rather decided to

2  sue Whitney.

3  80. Defendant denies paragraphs 13 through 16.

4  Whitney made no false or fraudulent representations for the 3 years involved with this

5  project. Peden is not entitled to recover statutory penalty, reasonable attorney fees or

6  damages. Peden made the decision to terminate Whitney services on a "what if this

7  happens" scenario. Whitney received written approvals exceeding 140K balances to

8  complete the remaining 2 services and expected Peden would honor that.

9  **FIFTH CASUSE OF ACTION**

10  (Violation of Consumers Legal Remedies Act – Civil Code § 1750 et seq.)

11  81. Defendant incorporate by reference paragraphs 1 through 80 as though fully set forth here.

12  82, Defendant lacks information paragraphs 20 through 22.

13  Whitney has no personal knowledge.

14  84. Defendant denies paragraphs 26 through 28 and 1 through 5.

15  Whitney never engaged in unfair or deceptive acts. All work was approved by Peden.

16  Whitney completed 16 of 18 work orders over a 3-year period before termination.

17  85. Defendant denies paragraphs 6 through 13.

18  At no time did Whitney falsely represent any open invoices on this design build project.

19  The last summary was sent via email to Peden November 26, 2025.

20  The summary showed a balance of 140,670. It also showed open and closed work orders.

21  Peden seems to be focusing on a few invoices and not the overall financial picture of the

22  project. It is not uncommon for a builder to have open invoices during course of work.

23  Whitney may have offsets or credits to consider during the course of a project.

24  86. Defendant lacks information paragraphs 14 through 17.

25  Whitney cannot speak for Peden and the decisions they have made. Over a 3-year period

26  on this project, Whitney never engaged in any form of misrepresentation. All documents

27  presented to Peden were 100% legitimate.

28  87. Defendant admits paragraph 18 and denies paragraph 19.

1  Whitney has no misappropriated funds only earned for services provided.

2  88. Defendant denies paragraph 20 through 25.

3  Whitney cannot be held accountable for the decision to terminate Whitney services

4  without cause. Whitney was always ready, willing and able to complete the remaining

5  2 tasks. Peden made no effort whatsoever to meet with Whitney but made every effort

6  to reach out to contractors already on site. The true reason Whitney was terminated was

7  to simply eliminate the need to pay for Whitney future services.

8  89. Defendant denies paragraphs 26 through 28 and 1 through 1.

9  Whitney did not engage in any wrongdoing or deceptive practices. All agreements were

10  approved in writing by Peden including but not limited to plans and specifications, pre-

11  construction proposal, 17 additional work orders that included the original construction

12  agreed scope of work. Peden is the party that has breached the agreement, not Whitney.

13  Peden should take nothing from this complaint.

14  **SIXTH CAUSE OF ACTION**

15  (Unfair Business Practices – Business and Profession Code § 17200 et seq.)

16  90. Defendant incorporate by reference paragraphs 1 through 89 as though fully set forth here.

17  91. Defendant denies paragraphs 5 through 8.

18  Whitney has not engaged in any unlawful act knowingly.

19  92. Defendant denies paragraphs 9 through 14.

20  Whitney has not engaged in any unlawful act knowingly.

21  93. Defendant denies paragraphs 15 through 19.

22  Whitney project accounting has been very clear since the year 2023 and available

23  to Peden at all times. Whitney does not engage in unfair acts or practices.

24  94. Defendant denies paragraphs 20 through 24.

25  Whitney has provided an accounting of the project since day one. A construction

26  software program called BuilderTrend was used for complete clarity to Peden.

27  Funds received to date have been earned. A balance of 140K was still showing upon

28  termination. Attorney Peden was more interested in stopping the project than meeting

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1    with Whitney to discuss any possible concerns.

2    95. Defendant denies paragraphs 25 through 28 and 1 through 3.

3    Whitney never engaged in unlawful, unfair or fraudulent business activities. Whitney

4    simply had a few open invoices on a project under construction. Peden had another

5    140K to be paid to Whitney upon further progress.

6    96. Defendant denies paragraphs 4 through 8.

7    Whitney set time aside specifically to build this project. Peden breached Whitney

8    agreement. The reason was much clearer to Whitney on January 7, 2026, Whitney drove

9    by the project site only to see the original excavation company working thus eliminating

10   further payments to Whitney. Peden is not entitled to any recovery for their own breach of

11   agreement with Whitney.

12   **SEVENTH CAUSE OF ACTION**

13   Civil RICO - 18 U.S.C. § 1962©, Mail and Wire Fraud)

14   97. Defendant incorporate by reference paragraphs 1 through 96 as though fully set forth

15   here.

16   98. Defendant denies paragraphs 12 through 13.

17   Peden breached Whitney construction agreements. Peden made the decision to terminate

18   agreements without good cause. Whitney believes Peden had a prior agenda to sue rather

19   than work out any differences Whitney and Peden have. This is a construction breach of

20   contract issue and does not fall under RICO, 18 U.S.C. §§ 1961 – 1964, including § 1962 (c),

21   Peden is seeking treble damages, costs, and reasonable attorney's fees under 18 U.S.C., §

22   1964(c). for Peden own breach of agreements and should not be allowed.

23   99. Defendant denies paragraphs 14 through 18.

24   Whitney or Gaydos does not engage in affairs of an "enterprise" as Peden may suggest. We are a

25   design build firm only. Whitney completed 16 of 18 different work orders approved by Peden

26   leaving 2 work orders that were in progress prior to Peden terminating Whitney services without

27   good cause. Whitney and Peden worked together on and off for 3 years, this is by no means a

28   "scheme" as Peden has suggested.

100. Defendant denies paragraphs 19 through 21.

Whitney used a software program specifically for the construction industry called "BuilderTrend". The program tracks approved agreements, change orders and accounting of a project to name a few. Whitney does not control "BuilderTrend" software programing or engage in a separate enterprise as Peden has stated.

101. Defendant denies paragraphs 22 through 26.

Whitney proceeded with all approved Peden agreements starting from the year 2023 through the year 2025. The job running total was 257,592.53 and upon termination of services the project balance was 140,670. The original agreed construction agreement was 175,200, leaving 80% of the original agreement in place for future payments. Whitney does not engage in a so called "scheme" as Peden has suggested. All agreements, change orders, invoices to Peden are 100% legitimate.

102. Defendant denies paragraphs 27 through 28 and 1 through 3.

Whitney accepted payments on Peden account by 2 means. The BuilderTrend software construction platform and checks by phone. Peden always needed to initiate payments voluntary for all progress payments on Peden account with Whitney. Account reporting was always available to Peden online 24/7 since 2023 for viewing. Whitney having very few open invoices during a design build project are not uncommon in the construction industry.

103. Defendant denies paragraphs 4 through 6.

Whitney received progress payments from the year 2023 to the year 2025 for services provided to Peden. At no time was any progress payment forced on Peden but always voluntary. All invoices received prior approval from Peden before disbursement of funds to Whitney.

104. Defendant denies paragraphs 7 through 9.

Whitney does not engage in "racketeering activity" under 19 U.S.C. § 1961(1) Before any funds were disbursed to Whitney, Peden was required to approve scope of work orders, only then the BuilderTrend construction software program

1     would generate an invoice and update the project accounting running total.

2     Peden had complete online access to an owner's portal showing this 24/7.

3  105. Defendant denies paragraphs 10 through 15.

4     Attorney Peden has made too many false accusations in this briefing. The project

5     accounting has not changed since the year 2023. All money received has been earned

6     with a committed approved balance that exceeded 140K upon additional progress.

7     Whitney was told multiple times by Peden they were running out of money.

8  106. Defendant denies paragraphs 16 through 19.

9     All payments by Peden were initiated by Peden. All agreements, change orders, invoices

10    are 100% legitimate and always approved by Peden. Whitney does not engage in a

11    "pattern of racketeering" within the meaning of 18 U.S.C. § 1961 (5).

12  107. Defendant denies paragraphs 20 through 22.

13    Whitney did not participate in a pattern of racketeering as Peden suggested.

14  108. Defendant denies paragraphs 23 through 27.

15    Peden made the decision to terminate Whitney services without good cause. That breach

16    is of Peden own doing not Whitney. Whitney was always willing, able and ready to help

17    see this project to completion. Peden is focusing on a few open Whitney invoices to argue

18    wrongdoing by Whitney. This does not meet RICO violations.

19  109. Defendant denies paragraph 28 and paragraph 1.

20    Peden's are not entitled to any recovery for their own breach of agreement.

21              **EIGHTH CAUSE OF ACTION**

22           (Money Had and Received / Unjust Enrichment)

23  110. Defendant incorporate by reference paragraphs 1 through 109 as though fully set forth

24    here.

25  111. Defendant denies paragraph 5 through 7.

26    Whitney received progress payments of $129,684.53 with an approved balance of

27    $140,670.00. This was not specific to one given invoice as Peden may suggest but to the

28    overall project cost and percentage of completion. Whitney's accounting records have

1   shown this to Peden since the year 2023.

2   112. Defendant denies paragraph 8 through 11.

3   Whitney completed 16 of 18 work orders and was in the middle of the last 2. Work was

4   ongoing prior to Peden's termination of Whitney. Whitney has documented photos of

5   progress. Peden to suggest to this court that no work was performed is completely 100%

6   misleading and untrue.

7   113. Defendant denies paragraph 12 through 14.

8   All progress payments Whitney received to date have been earned. Peden's breach

9   of agreement does not take away from the fact Whitney was always available, ready and

10   willing to continue with the last 2 work orders but was stopped by Peden.

11   114. Defendant denies paragraph 15 through 17.

12   Peden's are not entitled to recovery for their own breach of agreement.

13   ### NINTH CAUSE OF ACTION

14   (Declaratory Relief and Restitution)

15   115. Defendant incorporate by reference paragraphs 1 through 114 as though fully set forth

16   here.

17   116. Defendant denies paragraph 21 through 24.

18   All change orders presented for Peden's approval are 100% legitimate and no

19   fraudulent misrepresentation was made by Whitney.

20   117. Defendant denies paragraph 25 through 27.

21   All work orders, change orders were presented to Peden for signature of approval prior to

22   commencement of work. This also included the original construction agreement Peden

23   would not sign off on. Whitney never unknowingly violated CSLB laws for California

24   contractors. Whitney proceeded with work upon approved signatures only. Peden is

25   certainly, responsible for paying Whitney for services provided.

26   118. Defendant denies paragraph 28 and paragraph 1 through 2.

27   All payments made to Whitney were progress payments and not specific to one invoice

28   as outlined by Peden. Whitney's accounting will show contract price, approved change

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1   orders, payments received, credit memos and amount still due on account which

2   exceeded 140K.

3   119. Defendant denies paragraph 3 through 5.

4   All change orders and work orders are 100% legitimate and approved by Peden.

5   120. Defendant denies paragraph 6 through 8.

6   Contract, change orders, invoices for services provided are all 100% legitimate. Peden

7   is not entitled to seek recovery for completed and in progress work for breach of contract.

8   **PRAYER FOR RELIEF**

9   121. WHEREFORE, Defendant denies that the Plaintiffs are entitled to requested relief, or to

10   any relief whatsoever, including those requested in the "Prayer for Relief".

11   Defendant pray that Plaintiffs take nothing by reason of the complaint

12   on file herein, that the complaint be dismissed with prejudice, and that Defendant be

13   awarded cost of suit and such other relief as the Court deems just.

14   122. Defendant seeks mediation or arbitration of this construction dispute.

18   DATED: March 7, 2026

19   _____

20   Mark Whitney
    3558 Round Barn Blvd Ste 200
21   Santa Rosa, CA 95403

22   Pro Se

- 21 -

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)