Patricia Peden (Bar No. 230440)
2261 Market Street, No. 606
San Francisco, California, 94114
(415) 895-2940
(415) 895-2964 facsimile

*Attorney for Plaintiffs*

Mark Rice (Bar No. 124934)
McNeil, Silveira, Rice & Wiley
55 Professional Center Pkwy, Ste A,
San Rafael, CA 94903-2770
415-472-3434
415-472-1298 facsimile

*Attorney for Defendant*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Timothy and Patricia Peden        Plaintiffs, )<br>)<br>) | Case No. 3:26-cv-00013 |
| v.       )<br>)<br>) | **INITIAL JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| Mark Whitney d/b/a Whitney Homes       Defendant. )<br>)<br>) | **May 21, 2026  11:00 am** |

This joint Case Management Statement is jointly submitted by Plaintiffs Timothy Peden and Patricia Peden (collectively, "Plaintiffs" or "the Pedens") and Defendant Mark Whitney, doing business as Whitney Homes ("Whitney" or "Defendant").

The parties held their Fed. R. Civ. P. 26(f) conference on March 12, 2026, during which they discussed all required topics in Rule 26, and this Court's Standing Order.

The Initial Case Management Conference was originally set for April 2, 2026. Whitney contacted the Court to advise that he was in the process of retaining counsel, and to request a continuance. The conference was continued to May 7, 2026. Because Defendants' counsel had not yet entered his appearance, the Court continued the Initial Case Management Conference to May 21, 2026. Defendant's counsel has filed his Notice of Appearance and the parties are ready to proceed.

**1.     Jurisdiction and Service:**

This Court has federal question jurisdiction under 28 U.S.C. § 1331 because the complaint asserts claims under RICO, 18 U.S.C. §§ 1961-1964. Supplemental jurisdiction exists over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same operative facts, forming the same case or controversy as the federal RICO claim.

There are no disputes regarding personal jurisdiction or venue.

Whitney disputes the validity of the RICO claim and is likely to seek remand to Sonoma County Superior Court if and after a dispositive motion to dismiss the RICO claim, which is the basis of Plaintiffs' claim of Federal Jurisdiction. Specifically, Defendant contends that the RICO claims lacks factual and legal merit, in that, inter alia, Whitney is one person and not a separate "enterprise" from himself, and that the claims is a garden variety common law billing claim and not a RICO claims. Meet and confer letters and discussions are ongoing on this topic.

Whitney asserts a (disputes) claim for unpaid compensation of approximately $59,000 and will seek stipulation to file his counterclaim for same.

**2.     Statement of Facts:**

Plaintiffs Statement of Facts

Timothy and Patricia Peden hired Whitney Homes to construct a retaining wall in Sonoma County. The Pedens never signed a written agreement authorizing Whitney to receive "progress payments." *See* Cal. Bus. and Prof. Code §7159. Whitney used two types of change orders to obtain advances. One type

Initial Case Management Statement - 1

specified third-party costs, while the other involved unspecified "draw" language meant for undisclosed subcontractors (including an excavator, a "lead carpenter," and a rebar cage maker). For both, Whitney did not use the money for the purposes he represented to the Pedens. Whitney failed to pay the subcontractors in the seven days required under California's prompt payment statute. *See* Cal. Bus. & Prof. Code § 7108.5. In fact, he didn't pay them at all. Instead, he diverted the funds for personal use.

In late 2025, Whitney fabricated a story to the Pedens, claiming subcontractors were now demanding pre-payment for further work. Perplexed by this abrupt change in billing, Ms. Peden contacted the subcontractors to discuss their demands. She discovered that the subcontractors were requiring advanced payments because they had not been paid for past work. Whitney's Answer to the Complaint admits that he kept the subcontractors' money, asserting an entitlement that is not only absent from any enforceable contract but is also expressly forbidden by California law. *See e.g., People v. Schultz*, 2010 WL 2983001, at *2 (July 20, 2010) (criminal diversion includes pocketing money received under a construction agreement).

Upon discovering Whitney's theft, the Pedens terminated him, revoked all change orders for unperformed work, and demanded an accounting and return of funds. Whitney persistently refused to pay the subcontractors or return unearned money, despite numerous efforts to resolve the matter before filing suit. Whitney's theft included diverting at least $93,840 in advanced construction funds for his personal use. Although Whitney has paid some subcontractor debts since the litigation began, others remain outstanding, and he continues to refuse to reimburse the Pedens for the funds he misappropriated. Whitney's argument that he eventually settled his debts with the project subcontractors is both inaccurate and irrelevant. This argument is comparable to a car thief returning the keys once caught by the police and insisting that no crime took place. Regardless of any efforts to compensate some subcontractors after the filing of the complaint, Whitney remains in violation of the California theft statute.

Whitney's conduct in this case is not an isolated event. Whitney operates Whitney Homes as an ongoing business enterprise through which he, and those working with him, systematically divert money from homeowners under the guise of legitimate contracting work. Documents produced by third parties show that Whitney routinely violates California's comprehensive statutory scheme requiring prompt payment to subcontractors. Whitney has been repeatedly reported to the California Contractors State

License Board, which has found him in violation of contractor regulations, and he has been sued by other homeowners for wrongful conduct. These professional reprimands and lawsuits reflect a broader, systematic scheme to coerce advance payments and commit theft, all of which evidence a pattern of racketeering activity carried out through a continuing business enterprise.  Whitney Homes, a California stock corporation to be included in the Amended Complaint, constitutes a distinct legal "person" and "enterprise" separate from Mark Whitney.  Contrary to Defendant's assertions, this distinction is sufficient to satisfy the requirements of the RICO Statute. The illegal business practices employed by Whitney are the precise form of misconduct that RICO was intended to address.

Defendant's other assertions contain factual inaccuracies and pursue irrelevant tangents unrelated to the pending claims. Plaintiffs decline to address these extraneous matters here.

The Pedens seek recovery of all misappropriated construction funds, triple damages as mandated by California Penal Code Section 496(c), consequential damages arising from project delays and increased completion costs, and the full range of statutory, punitive, and fee-shifting remedies available under the federal RICO statute and California law, as well as recovery of mandatory attorneys fees.

Defendant's Statement of Facts

Whitney disputes Plaintiff's legal and factual claims; claims to be wrongfully terminated and that the owners took over his productive forces, subcontractors and consultants without his consent; and is owed $59,000 or more, which he plans to assert by way of counterclaim.

Other claims such as trade libel of Whitney are under investigation. Whitney has paid all design vendors and all subcontractors and all project bills. The claim of theft or nonpayment is incorrect. Also, Whitney presented a Builders Bookstore form of Home Improvement Contract compliant with B&P Code Section 7159 for construction but Plaintiffs, including an additional legal counsel to Ms. Peden an attorney, rejected his offer. A year later the parties proceeded without the HIC form but with signing a construction contract, waiving the HIC form thereby. The HIC progress payment terms do not apply to the initial design only contract, which per, the complaint's paragraph 14, is not being challenged. That design contract expressly contemplated hire of further engineers such as geotechnical engineer, structural engineer and surveyor.

Initial Case Management Statement - 3

The owners had represented to Whitney that they had *an in place* Encroachment Permit from the County of Sonoma. Later, this owner representation proved false and added design work and revisions to the County, and more design phase time. This is on the owner and became part of signed, approved design scope change orders signed by the owners.

Secondly, during the construction phase, once scarifying and initial retaining wall excavation after the needed Encroachment permit was secured, as a change order, the site soils appeared weaker after the cut by subcontractor-excavator. Whitney brought in the project structural engineer under his design contract scope to examine the site, soils, and re-evaluate the structural design. The Structural engineer then recommended adding 18 drilled piers with rebar cages to further stabilize the hillside below the elevated secondary vacation residence of the owners. That change order was also signed by the owners and Whitney then ordered the rebar cages and laid out the pier holes to be drilled and concrete poured. Then the owner abruptly terminated Whitney, after telling him a month before that they would take over paying the engineers directly and without approving the agreed 20% Whitney markup per the signed design contractor.

At that time, Whitney warned the owners to proceed before wet weather as an open cut in December 2025 was not indicated and counter to good practice. But the owners decided to disregard Whitney's warning and took over the project, and negligently suspended work, as rains were coming to affect an open cut with soils which the structural engineer and soils engineer had determined were too weak for their original approved design, and required more reinforcing including 18 new vertical piers. The owner assumed those project risks, and along with their material nondisclosure of not having an Encroachment permit from the County, were owner-side self-inflicted events, and for which they signed and approved additive change orders. Whitney is owed funds and contends the owner were trying to cut him out of his earned time and 20% Profit and Overhead, by usurping his design and construction teams.

**3.    Legal Issues:**

The disputed legal issues include:

1)      Liability for diversion of construction funds under Cal. Penal Code § 484b, including whether Whitney willfully failed to apply funds to represented purposes, and whether he illegally diverted construction funds for his personal use absent a contract that permitted him to take "progress payments."

Initial Case Management Statement - 4

2)      Liability of violation of home improvement contract and payment statutes (Bus. & Prof. Code §§ 7159, 7159.5, 7159.6, 7108), including whether the lack of a written contract and noncompliant payment demands render payments unlawful and support claims for statutory violations and restitution.

3)      Liability for fraud, statutory fraud and consumer-protection claims (Bus. & Prof. Code § 7160; Civ. Code §§ 1750-1780; Bus. & Prof. Code § 17200), including whether the alleged misrepresentations constitute statutory violations and what remedies are available.

4)      Civil RICO liability and causation, including whether the scheme constitutes an enterprise and a pattern of racketeering, and whether Plaintiffs' losses are proximately caused and recoverable as treble damages and attorneys' fees under 18 U.S.C. §§ 1962(c) and 1964(c).

5)      The amount of Plaintiffs' damages, including punitive damages and attorneys fees.

6)      Whitney's anticipated competing claims for wrongful termination, interference with business relations, and counter-claim for unpaid due sums for work performed, and ancillary remedies. Whitney denies Plaintiffs' claims and asserts that this is a garden-variety construction dispute over Plaintiffs' second or vacation home, lacks any RICO predicates, and should be remanded to Sonoma County Superior Court where the project is located.

7) lack of RICO claim and therefore lack of Federal Jurisdiction;

8) Under investigation trade libel;

9) Mootness from owner claim due to Whitney's payment of its design and construction vendors;

10) owner waiver of Home Improvement Contract form or terms;

11) Owner material nondisclosure and misstatement to Whitney of having an Encroachment Permit when not the case, elongating the project and signed added design work change orders not being acknowledged by owner as owner-caused delay and agreed cost;

12) Owner assumption of the risk of its project after 12.3.2025 termination and November 10, 2025 usurping Witney's design professional consultants, including the owner's February 6, 2025 soils collapse by not continuing immediately with completion of the new design add of the 18 vertical piers, but stopping the work just at the onset of wet weather and Winter rains, and an open retaining wall cut.

13) investigation is ongoing as Whitney has yet to initiate discovery to Plaintiff.

Initial Case Management Statement - 5

14) Whitney is in process of filing its counterclaim, and has met and conferred with Plaintiff/Plaintiff's counsel Ms. Peden re same.

**4.     Motions:**

Currently, no prior or pending motions. It is possible, however, that motions may be pending by the time of the Case Management Conference.

Plaintiffs' Anticipated Motions

Plaintiffs will soon file the following motions:  (1) motion for entry of the Court's model protective order (meet and confer requirement met); (2) to compel rule-complaint responses to Plaintiffs' First Set of Interrogatories (meet and confer requirement met); (3) motion to compel production of documents responsive to Plaintiff's First Set of Requests for Production (meet and confer requirement met).

Plaintiffs anticipate filing a motion to compel Defendant to produce documents in response to Plaintiffs' Second Set of Requests for Production (deadline for objections and responses has passed, no objections or responses received, but meet and confer is pending).

At the appropriate time, Plaintiffs will move for summary adjudication directed to violations of California contractor and theft statutes, which they contend can be decided as a matter of law.

Defendant's Anticipated Motions

Defendant anticipates filing summary adjudication to dismiss the RICO claim, and other non-contractual claims. Leave to file its Counterclaim.

It is anticipated discovery responses are being amended to address some of the recent meet and confer last week between counsel.

Meet and confer over a proposed Protective Order is ongoing.

**5.     Amendment of Pleadings:**

Plaintiffs

Plaintiff plans to amend the complaint to add claims against Whitney that sound in negligence. This amendment will also introduce Whitney Homes Corporation as a named defendant, along with a claim against Whitney's bonding company.  If justified by ongoing investigations into potential causes of action against further parties, Plaintiffs may further amend their pleadings to include such claims.

Initial Case Management Statement - 6

<u>Defendant</u>

Defendant plans to amend his Answer to state that one of the subcontractors at issue in the Complaint, Cordoza Concrete, has now been paid in full, along with all other design vendors and construction vendors as applicable

Defendant Whitney plans to file a counterclaim for breach of contract and common counts, and possibly trade libel and contract/business relations interference

**6.    Evidence Preservation:**

Plaintiffs sent Defendant a preservation notice on December 3, 2025.

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.    Disclosures:**

The parties have exchanged their Initial Disclosures.

**8.    Discovery**

A.    <u>Scope of Anticipated Discovery</u>

Plaintiffs' discovery will focus on: (1) Defendant Mark Whitney and Whitney Homes' diversion of construction funds, fraudulent invoicing, and misuse of owner funds, including internal communications and project files for the retaining wall project; (2) third-party subpoenas to unpaid subcontractors and vendors for documents and testimony concerning invoices, payment, prepayment demands, project delays and misuse of client funds; (3) Defendant's banking, accounting, and financial records to trace Whitney Homes' diversion of funds it was paid for subcontractors and vendors; (4) Defendant's pattern of misconduct, including complaints, investigations, and disciplinary actions involving the California Contractors State License Board, and pleadings and discovery from other lawsuits; and (5) documents and testimony from replacement contractors, consultants, and expert witnesses regarding increased completion costs, delay damages, and other compensation owed to Plaintiffs.

Defendant's discovery will focus on:  traditional construction case discovery of documents, interrogatories, requests for admission, and depositions of Plaintiffs and others.

Initial Case Management Statement - 7

Defendant believes the breadth of sought discovery from Plaintiff, including his personal tax returns and ten-years of projects, are improper and aimed at harassing Whitney and attempting to interfere with his clientele and vendor relations, moot, and not reasonably calculated to lead to the discovery of admissible evidence and invading his and customer and vendor financial and personal privacy. Such discovery should be deferred and stayed pending focused discovery towards Defendants Summary Judgment Motion that the RICO action is without merit.

B.    Discovery Taken To Date

Plaintiffs

Plaintiffs have served the following discovery:

10 non-party subpoenas.

First Set of Interrogatories, due April 16, 2026.  The defendant failed to respond by the return date, but has since provided responses.  Plaintiffs contend that the responses are deficient.

First Set of Requests for Production.  Response due April 23, 2026.  The defendant failed to respond.  No documents were produced.

Second Set of Requests for Production.  Response due May 6, 2026.  The defendant failed to respond.  No documents were produced.

Defendant

Defendant has not yet served discovery but will be doing so shortly, including document requests, interrogatories, requests for admission, and Plaintiff's deposition. Meet and Confer has occurred as regards attorney-witnesses under Cal Professional Responsibility Rule 3.7 and Ms. Pedens's requirement to place on reporter transcript in open court that informed consent exists.

C.    Proposed Modifications of the Discovery Rules

To reduce cost, the parties propose one change to the default discovery limits:

(1)    The parties agree to email service.

D.    Stipulated E-discovery Order.

The parties do not anticipate needing a stipulated e-discovery order.

E.    Proposed Discovery Plan Pursuant to Fed. R. Civ. P. 26(f)

Discovery subjects are identified in section 8(A).

The parties do not propose any changes to the form or requirements for initial disclosures.

Initial Case Management Statement - 8

The parties do not propose phased discovery.

Plaintiffs will seek the entry of a protective order based on the Court's model order.

The proposed date for close of fact discovery is set forth in section 15 (scheduling).

Currently, there are no ESI issues.

The parties will comply with the Court's Standing Order at paragraph 2.2 regarding privilege logs.

In accord with the Court's Standing Order paragraph 4, the parties agree to assign deposition exhibit numbers.  Plaintiffs will use exhibit numbers 1 through 3000.  The Defendant will use exhibit numbers 3000-6000.

F.    Discovery Disputes

Plaintiffs' Statement

The parties have open discovery disputes regarding entry of a protective order, Defendant's responses to Plaintiff's First Set of Interrogatories, and Defendant's failure to respond to Plaintiffs First and Second Set of Requests for Production.  These issues are identified in Section 4 above (motions).

Defendant's Statement

Meet and confer is ongoing on each as new counsel takes charge of the defense. Documents are forthcoming, and amended Interrogatory Responses both expected before the May 21, 2026 CMC.

**9.    Class Actions:**

This is not a class action.

**10.    Related Cases:**

There are no related cases or proceedings.

**11.    Relief:**

Plaintiffs' Statement

Plaintiffs seek damages of at least $93,840 for diverted construction funds (consisting of $65,000 in unapplied draw payments and $28,840 in owner funds diverted from subcontractors).  Plaintiffs are entitled to recover triple this amount pursuant to California Penal Code Section 496(c), bringing their initial theft-related damages to $151,520.  In addition, Plaintiffs seek damages as a result of increased costs for replacement contractors, costs to correct and complete the project, delay and carrying costs, and expenses from mechanics-lien exposure, which will be established through documentation and expert

Initial Case Management Statement - 9

testimony.  Plaintiffs estimate project-related damages to be $266,000. Punitive and exemplary damages are sought based on the Defendant's intentional, willful, and malicious misconduct.  Plaintiffs also seek attorneys fees, costs of suit and prejudgment interest.

Defendant's Statement

Defendant Whitney seeks $59,000 approximately  in principal damages, and that Plaintiffs take nothing by way of their complaint; and potentially general damages for trade libel after discovery

**12.    Settlement and ADR:**

Plaintiffs made several attempts to resolve this dispute prior to filing their Complaint.  Shortly after initiating suit, Plaintiffs sent Whitney a written settlement demand, which was not accepted and has now expired.  No other post-suit settlement efforts have occurred.

The Parties confirm compliance with ADR L.R. 3-5.

Plaintiffs' Statement

The Plaintiffs favor Early Neutral Evaluation as their chosen ADR process.  In their view, a settlement is most likely if a construction-law expert provides an objective and thorough evaluation of the case's merits, liability, and damages. Without such a professional assessment, the Plaintiffs anticipate a repeat of the unproductive pre-litigation discussions with Whitney, where their attempts to resolve the conflict were met only with a summary statement that Whitney "disagreed," with no further explanation for his conduct.

Defendant's Statement

The Defendant will propose mediation on a schedule after sufficient fact discovery to be determined. This case is a small, moot case, belongs in State Court, not a RICO case, and does not require third party experts to evaluate.

**13.    Other References:**

This case is not suitable for reference to an alternative venue.

**14.    Narrowing of Issues:**

No party seeks bifurcation.

Plaintiffs propose resolving the critical legal question of whether Whitney violated California law by diverting payments he received from the Pedens through an early summary adjudication motion. This

Initial Case Management Statement - 10

issue can be resolved solely by applying the law to the undisputed facts of the payments.  An early ruling on Whitney's conduct will simplify the RICO claim, allowing Plaintiffs to focus later discovery on Whitney's pattern of the same illegal activities, over a period of years, with other clients.

Defendant disagrees with Plaintiffs' above stated position.

**15.    Schedule**

| Event | Agreed Deadline |
|---|---|
| Initial disclosures (Rule 26(a)(1)) | Completed |
| Deadline to amend pleadings / add parties | July 3, 2026 |
| Completion of court-ordered ADR session | October 31, 2026 |
| Close of fact discovery | January 8, 2027 |
| Initial expert disclosures (Rule 26(a)(2) opening reports) | February 9, 2027 |
| Rebuttal expert disclosures | March 15, 2027 |
| Close of expert discovery | April 30, 2027 |
| Last day to file dispositive motions and *Daubert* motions | May 27, 2027 |
| Rule 26(a)(3) pretrial disclosures (witnesses, exhibits, deposition designations) | September 16, 2027 |
| Objections to Rule 26(a)(3) pretrial disclosures | September 30, 2027 |
| Motions in limine; exchange of final exhibit and witness lists | October 7, 2027 |
| Joint pretrial filings (pretrial statement, voir dire, jury instructions, etc.) | October 14, 2027 |
| Final Pretrial Conference | November 4, 2027 |
| Jury trial | November 29, 2027 |

**16.    Trial:**

Both parties have demanded a jury trial. The parties anticipate trial to take five to six days.

Initial Case Management Statement - 11

**17.    Disclosure of Non-party Interested Entities or Persons:**

Plaintiffs filed the required Rule 3-15 disclosure, the contents of which are:  "Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report.

[Defendant to insert his statement]

**18.    Professional Conduct:**

Ms. Peden has reviewed the Guidelines for Professional Conduct for the Northern District of California.

Mr. Rice has reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.    Other Matters:**

None.


Date:  May 14, 2026                                             Respectfully submitted,

                                                               /s/ *Patricia L. Peden*
                                                               Patricia L. Peden
                                                               2261 Market Street, No. 606
                                                               San Francisco, California, 94114

                                                               *Attorney for Plaintiffs*
                                                               /s/      Mark J. Rice

Initial Case Management Statement - 12