Mark J. Rice (SBN 124934)
**MCNEIL, SILVEIRA, RICE & WILEY**
55 Professional Center Parkway, Suite A
San Rafael, CA 94903
Telephone: (415) 472-3434
Facsimile: (415) 472-1298
Email:  markjrice@msrwlaw.com

Attorneys for Defendant
MARK WHITNEY dba WHITNEY HOMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY and PATRICIA PEDEN | No.  3:26-cv-00013-LB |
| Plaintiffs, | **[PROPOSED] ORDER UPON STIPULATION FOR LEAVE FOR DEFENDANT MARK WHITNEY dba WHITNEY HOMES TO FILE COUNTERCLAIM** |
| vs. | |
| MARK WHITNEY d/b/a WHITNEY HOMES, | |
| Defendant. | |

Defendant MARK WHITNEY dba WHITNEY HOMES and Plaintiffs TIMOTHY and PATRICIA PEDEN, by their respective attorneys of record, hereby stipulate that Defendant Mark Whitney dba Whitney Homes can file his Counter-Claim in this proceeding.  A copy of the Counter-Claim is attached hereto as **Exhibit 1.**

Plaintiffs stipulate only to Defendant's filing of the counterclaim outside the time otherwise provided by rule. Plaintiffs do not, by this stipulation, waive any objections or challenges to the counterclaim and expressly reserve all rights to assert any motion or defense permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

**SO STIPULATED:**

Dated:  June 29, 2026          **McNEIL, SILVEIRA, RICE & WILEY**

by_____/s/_____
          MARK J. RICE
Attorneys for Defendant Mark Whitney dba Whitney Homes

Dated:  June 29, 2026

by_____/s/_____
          PATRICIA PEDEN
Attorney for Timothy and Patricia Peden

### **ORDER**

Good cause appearing, and upon the stipulation of the parties via their attorneys of record herein, leave is hereby GRANTED for Defendant to file his Counterclaim for Damages, which is attached hereto as **Exhibit 1**.  The Clerk shall accept said Counterclaim for filing upon filing of this ORDER.

As noted in the underlying Stipulation, Plaintiffs have stipulated only to Defendant's filing of the counterclaim outside the time otherwise provided by rule. And as part of this Order, Plaintiffs do not, by their stipulation, waiving any objections or challenges to the counterclaim and expressly reserve all rights to assert any motion or defense permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

**SO ORDERED.**

Date: _____          _____
                               HONORABLE LAUREL BEELER

[PROPOSED] ORDER UPON STIPULATION FOR LEAVE TO FILE COUNTERCLAIM

EXHIBIT 1

Mark J. Rice (SBN 124934)
**MCNEIL, SILVEIRA, RICE & WILEY**
55 Professional Center Parkway, Suite A
San Rafael, CA 94903
Telephone: (415) 472-3434
Facsimile: (415) 472-1298
Email: markjrice@msrwlaw.com

Attorneys for Defendant/Counter-Claimant
MARK WHITNEY dba WHITNEY HOMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TIMOTHY and PATRICIA PEDEN<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MARK WHITNEY d/b/a WHITNEY HOMES,<br><br>　　　　　Defendant.<br>_____<br><br>MARK WHITNEY d/b/a WHITNEY HOMES,<br><br>　　　　　Counter-Claimant,<br><br>vs.<br><br>TIMOTHY PEDEN and PATRICIA PEDEN,<br><br>　　　　　Counter-Defendants.<br>_____ | NO.  3:26-CV-00013-LB<br><br><br><br><br><br><br><br><br><br>**MARK WHITNEY dba MARK COUNTERCLAIM FOR DAMAGES AND:**<br>　1. **BREACH OF CONTRACT**<br>　2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>　3. **REASONABLE VALUE- UNJUST ENRICHMENT**<br>　4. **DECLARATORY RELIEF** |

Defendant and Counter-claimant Mark Whitney, dba Whitney Homes ("Whitney" or "Counter-claimant") alleges for a Counter-claim for Damages, as follows:

1
MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

1. Counter-claimant Mark Whitney, dba Whitney Homes ("Whitney") is an individual, residing in Santa Rosa, and is a licensed California Contractor, CLSB #434267, B Classification as General Building Contractor, and doing business as Whitney Homes. During the subject project described below, Whitney was duly and continuously licensed as a contractor.

2. On information and belief, Counter-defendants Patricia Peden and Timothy Peden (collectively, "Peden" or "Cross-defendants") are wife and husband, and on information and belief, reside in the City of Piedmont, Alameda County.

3. Peden's own a second or vacation property at 17543 Neeley Road, Guerneville, County of Sonoma, APN 071-230-102-000 ("the Property" and "the Project").

4. The owners Peden undertook a project at the property, which included demolition and relocating exterior stairs to the residential structure on the property, which encroached onto the County Right of Way, and also, installing new site retaining walls to afford more parking at the street. The Pedens misrepresented to Whitney that they had an Encroachment Permit from the County of Sonoma, and/or were having a separate contractor secure it, which later proved during the planning and permitting process to be untrue and led to added design change orders and extra work, as well as project time impacts, belonging to the owner..

5. The original contract scope was pre-construction services under a "Pre-Construction Agreement" to for planning and design services for the project. A true and correct copy of that contract and Pre-Construction Agreement is attached hereto as **Exhibit 1** and made a part hereof by this reference.

6. Within the scope of the Pre-Construction Agreement, it was contemplated and expected that Whitney would submit plans for permit issuance to the County of Sonoma as part of a scope of work for Planning and Design.

7. Specifically, in the description portion of the Pre-Construction Agreement, attached as Exhibit 1 hereto, it reads as follows:

Planning & Design for a new retaining wall, parking & new stairs…

8. The Pre-Construction Agreement attached at **Exhibit 1** also includes the following agreed terms:

### 2023 Peden
Hi Patricia…
The other items we may need to consider for plan review & approval prior to construction…
1. Survey

2. Soil engineering
3. Structural engineering
4. Civil engineering
**Pre-construction & course of construction:**
**Whitney Homes charges cost of work + 20% for profit/overhead...**

9.    As part of Whitney's services under the Pre-Construction Agreement, on or about December 18, 2023, Whitney obtained stamped approval of the submitted plans under BLD 23-7630 for issuance of a building permit by the County of Sonoma authorizing construction to take place at the Property, and which building permit was in fact, issued for construction.

10.    Under paragraph 14 of the underlying complaint, Plaintiffs allege, *inter-alia,* that "In this complaint, the Peden's do not assert claims or seek damages arising from the preconstruction agreement." Therefore, this Counterclaim minimizes such discussion, while in summary fashion lists the Design Change Orders.

11.    A Design only contract is not governed by B&P Code Sections 7151 and 7159 as not involving actual construction, but design only.

**Change Orders Associated with the Design and Planning Services under the Parties' Signed Pre-Construction Agreement:**

12.    Within the services to be provided under the Pre-Construction Agreement, Whitney issued Change Orders 1-8 to Peden's and signed by one of the Peden's.

13.    Based on paragraph 14 of the complaint, these Design Contract Change Orders 1-8 are not in dispute. Nor therefore, is the timing of their payment a dispute, nor a Home Improvement Contract issue.

14.    When the Design Contract was signed, and before, Peden represented to Whitney that they had an Encroachment Permit from the County of Sonoma needed for the design scope and later construction scope. Whitney reasonably relied on those representations from Peden in its design scope of work.

15.    However, later, in interface with the County during its plan check and design review, it was learned by Whitney that Peden had misspoke and that in fact, there was no County of Sonoma issued Encroachment permit.

16.    This in turn required additional design services from Whitney to secure an Encroachment Permit. As described in Design Scope Change Order #8, Change Order #8 signed and agreed to by the Peden's was for Whitney's design time (additional design services) for preparing a design in order to obtain an Encroachment permit from the County of Sonoma.

17.    Change Order #8 signed by and agreed to by the Peden's states in part:

3
MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

**"2025.02.05 Encroachment Design**

**Provided an Encroachment Permit plan set per Sonoma County request and revision to building permit drawings for the project located at 17543 Neeley Road, Guerneville. Encroachment plans fall under Civil Engineering category and thus was not a part of the original design scope."**

18.    The Peden's paid Whitney the $2500 for the additional design services described in Change Order #8.

19.    Also, Change Order #10 dated March 3, 2023 and signed by one of the Peden's and paid, was for staking services by Hogan Land Services, a surveyor, and part of the Design Scope of Work, as professional design services, issued on or about March 4, 2025 was in the sum of $1980; along with a portion of Change Order #13 dated June 5, 2025 and signed by one of the Peden's on or about June 9, 2025, to wit, and inter-alia, ""Base allowance for the following: 1. Engineer site visit, report & recommendation..."

While the Change Order #14's civil requirements for the encroachment permit work was done after the execution of the March 1, 2025 Construction Agreement (Change Order #9), it remained professional design services and an extension and part of the underlying Design Contract called herein the "Pre-Construction Agreement" attached hereto as Exhibit1. The item one services in Change Order #14 described therein as Civil requirements specifically for encroachment permit from County of Sonoma…". was performed for the project.

20.    Whitney has paid all vendors associated with the Pre-construction Agreement including the original $7500 design and planning sum, and all services rendered to the project associated with Change Orders involving design, engineering, surveying, planning and County of Sonoma fees, including Design Change Orders #1-8, 10, and the design portion of Change Order #13 applicable to the added design services in order to secure an Encroachment Permit from the County of Sonoma.

**The March 1, 2025 Construction Agreement Signed by Plaintiffs and Whitney**

21.    On or about March 21, 2024, after building permit issuance, Whitney submitted to Plaintiff a form of contract entitled "Home Improvement Contract", a copy of which is attached hereto as Exhibit 2 and made a part hereof by this reference.

22.    The Home Improvement Contract proposed by Whitney and submitted to the Plaintiffs on or about March 21, 2024, and attached as **Exhibit 2** hereto, was a printed form prepared by Buildersbook, Inc. located in Canoga Park, CA.

4

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

23.    Buildersbook, Inc. sells the form of fillable Adobe platform Home Improvement Contract, attached as **Exhibit 2**, before Whitney's filled additions, as compliant with the Home Improvement Contract statute located at Business & Professions Code Section 7159.

24.    Whitney's proposed Home Improvement Contract, attached as **Exhibit 2**, including Whitney's filled additions, is/was compliant with the Home Improvement Contract statute located at Business & Professions Code Section 7159.

25.    Whitney's proposed Home Improvement Contract, attached as **Exhibit 2,** including Whitney's filled additions, is substantially compliant with the Home Improvement Contract statute located at Business & Professions Code Section 7159.

26.    After Whitney submitted to the Peden's his proposed Home Improvement Contract, attached as **Exhibit 2**, including Whitney's filled additions, for the project, the Peden's had licensed attorney review that form for them, whose California Bar # was and is #344979.

27.    Plaintiff Patricia Peden herself is a licensed attorney, California Bar #206440, issued by the State Bar on or about April 14, 2000 In her capacity and with her skill and knowledge as a licensed attorney, Plaintiff Patricia Peden reviewed the form of Home Improvement Contract sent by Whitney to her and Tim Peden.

28.    The Attorney other than Patricia Peden who reviewed Whitney's proposed Home Improvement Contract, **Exhibit 2**, wrote to Whitney an email dated 2024 and cc'd to Plaintiff Patricia Peden:

Dear Mark,

Thank you for the contract and the photos of the form wall.  We would like to move forward with scheduling the project and we apologize for the delay on our end.  As lawyers, we are predictably annoying about contracts and have attached for you a redlined version of your contract with some changes we would like to make.   Please let us know if this works for you.  If you would like to discuss it further we are all free to chat on Friday.

Thank you,

29.    The Peden's added disclosures to the form of Home Improvement Contract, Exhibit 2, that they believed to be required.

30.    At that time, thereafter in March 2024, Plaintiffs did not accept the Home Improvement Contract presented by Whitney, and did not sign it.

31.    Whitney did not perform construction work or services in 2023 or 2024 for the Peden's, but continued with design and planning services under the Pre-Construction Agreement,

5

**Exhibit 1**, and Change Order work associated with the planning and design work under the Pre-Construction Agreement towards securing a building permit, and encroachment permit, from the County of Sonoma for the project.

32.    In 2023 and 2024, prior to signing the Construction Contract with Whitney attached hereto as **Exhibit 3** and labeled Change Order #09, the Peden's solicited bids from contractors other than Whitney for the project construction work,

33.    Instead, after considering other contractors, on or about March 1, 2025, Plaintiffs signed and entered into a written construction agreement, also known as Change Order #9, a copy of which is attached as **Exhibit 3** and made a part hereof by this reference.

34.    Before signing **Exhibit 3**, the Construction Agreement, Plaintiff Patricia Peden, read it, understood it, discussed it with her husband and co-Plaintiff Tim Peden, and read it not just as an owner but as the attorney representing both herself and her husband Tim Peden, and already on notice from Whitney's March 21, 2024 delivery of the Home Improvement Contract Form, Exhibit 2, what that law said and meant By signing a shorter form in **Exhibit 3**, the Pedens on advice of legal counsel (Patricia Peden) signed it. Plaintiff Tim Peden authorized Patricia Peden's signing **Exhibit 3,** the Construction Agreement on both their behalf.

35.    Whenever for this project, one or the other of Tim Peden or Patricia Peden signed a contract or change order with Whitney, the signature had both of their approvals and was signed to bind both of them to its terms.

36.     At the time of signing **Exhibit 3**, the Construction Agreement, Plaintiff Patricia Peden did not ask Whitney to re-present to her and Tim Peden, the construction contract in the form of **Exhibit 2,** the prior presented Home Improvement Contract form.

37.    Patricia Peden at the time of signing **Exhibit 3**, the Construction Agreement, was a sophisticated consumer. Tim Peden at the time of signing **Exhibit 3**, the Construction Agreement, was a sophisticated consumer.

38.    Before signing **Exhibit 3**, the Construction Agreement, Patricia Peden and/or Tim Peden spoke with a licensed California Attorney regarding its terms and whether to sign it.

39.    By signing **Exhibit 3**, the Construction Agreement, after previously having been presented by Whitney the Home Improvement Contract form, **Exhibit 2**, Plaintiffs waived the provisions of Business & Professions Code Section 7159.

40.    After signing **Exhibit 3,** the Construction Agreement, the Peden's signed change orders with Whitney increasing the scope of the project construction work.

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

41.    During the course of Whitney's construction work on the project, the project geotechnical engineer RGH on observing the site further after initial excavation, recommended that the project structural engineering design be increased with the addition of 18 drilled piers with rebar cages and concrete, to improve stability of the site retaining walls planned for the project.

42.    As part of (extension of) the Construction Agreement, **Exhibit 3**, the Peden's agreed to and signed Change Order #15 in the sum of $30,308 which bears the following description as to its construction allowance items, "2025.06.25 Piers Cost of Work +20% Profit/Overhead…P/O will be billed separately." The added 18 drilled vertical piers were added by the structural engineer after permit and initial retaining wall excavation, due to the engineer's view that the subject hillside was less stable and needed those added 18 drilled piers, beyond the initial permitted retaining wall design approved for permit by the County of Sonoma.

43.    In or about November  2025, Peden refused to sign or approve a geotechnical change order of added work, instead indicating that the Pedens were going forward taking over the design professionals' scope of work.

44.    On or about December 2-3, 2025, in several emails and through into January 2026 after owner termination, Plaintiffs' notified Whitney that he was terminated as their project contractor. At the time, Whitney was in process of the next day having the new piers drilled, and while the weather was still good and before the risk of adverse site impacts  from wet weather.

45.    Plaintiffs' termination of Whitney was a breach of contract by Plaintiffs of the Construction Agreement, **Exhibit 3**.

46.    At the time of termination by Plaintiffs of Whitney of the Construction Agreement, **Exhibit 3,** Whitney had caused the needed 18 rebar cages to be created by the rebar supplier.

47.    At the time of termination by Plaintiffs of Whitney of the Construction Agreement, **Exhibit 3**, on the project site, Whitney had partially performed of the planned Change Order #15 work, namely, including laying 50% of the locations for the planned new 18 drilled piers.

48.    Whitney since Plaintiffs' termination has paid vendors (subcontractors and suppliers) who performed work or supplied materials for performance of Change Order 15.

49.    On or about November 10, 2025, in an entry Plaintiffs made on Whitney's project Buildertrend software platform, Plaintiffs communicated that they were declining to execute Change Order #17.

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

50.    Separate from Buildertrend entries, one or more of the Peden's in an email approved the $6062 charge by Whitney for the 20% overhead and profit on the cost of the work stated in Change Order 15.

51.    Plaintiffs breached the contract by not signing Change Order #17.

52.    Before and after the Peden's December 3, 2025 termination of Whitney, Whitey wrote Peden warning Peden that it was not prudent to stop work on the hillside during incoming wet weather and where the project engineers had recommended the upgraded addition of 18 drilled piers to stabilize the hillside.

53.    Sonoma County Municipal Code Section 14.20.020 defines "rainy season" as follows: ""*Rainy season*" means that period of time when rains begin or October 15, whichever comes first, and ending on the following April 15 or when rains cease, whichever occurs last."

54.    Sonoma County Municipal Code Section 14.20.050 places constraints on stopping grading on hillsides which have been subject to a permit, during the rainy season as defined in Section 14.20.050 as follows:

A. *Commencement*. Grading, erosion control and sediment control work may commence upon issuance of the grading permit by the public works director. During the rainy season, as defined in SMC 14.20.020, grading work may not commence or recommence if erosion and sediment control measures required by SMC 14.20.205 have not been installed, implemented and maintained on the site to the satisfaction of the public works director or his/her representative. Regardless of whether a grading permit has been issued, grading shall not commence or recommence within an area that is adjacent to and/or within 50 feet of a drainage channel or course during the rainy season without specific written authorization from the public works director.

55.    By taking over the project, taking over the design engineering (geotechnical and structural engineering contracts) and not heeding Whitney's wet weather danger warnings to Peden, Peden assumed the risk of the remainder of the project work for which they took over, including adverse impacts from the exposed retaining wall excavation cut at their property, and in suspending the about-to-start added drilling work of 18 piers, after signing the Change Order adding those 18 piers and on notice of their need to stabilize their open cut hillside.

56.    Thereafter, on information and belief, on or about February 2026, from heavy and regular rains during the defined rainy season, and failing to promptly complete the work Whitney was underway to do before terminated, the owners experienced adverse impacts at their property at the cut hillside from the as designed retaining wall.

57.    The owners assumed that risk of such adverse impacts to the hillside retaining wall and drilled pier work, by their negligent and reckless failure to proceed immediately with

the added drill pier work in early December, 2025 as Whitney implored them to do, and are solely responsible for same.

58.    On information and belief, after terminating Whitney as contractor for their project, Plaintiffs have since submitted new design revision(s) to the County of Sonoma still under review at the County.

59.    In November 2025 and/or before, Plaintiffs began contacting Whitney's vendors, engineers and/or subcontractors to solicit pricing for them to finish the construction for them without Whitney's involvement.

60.    In seeking November 2025 and/or before from Whitney's vendors, engineers and/or subcontractors to solicit pricing for them to finish the construction for them without Whitney's involvement, Plaintiffs did not have nor obtain Whitney's consent to do so.

61.    With respect to the project, Peden paid Whitney $129,684.53.

62.    With respect to the project, the total price of all contract and change order amounts from Whitney to Peden was $257,592.53.

63.    By the time of termination, the owners the Peden's had decided to eliminate Whitney as a "middleman" between he and project engineers, surveyor, and subcontractors, after receipt of all County Sonoma needed permits to complete the work, as revised following the design addition of 18 piers to the original design.

64.    On or about November 10, 2025, in declining to pay Whitney Change Order #19, on the Buildertrend platform, Plaintiffs wrote, "Whitney Homes has approval to schedule these services. We agree to pay [project geotechnical engineer] RGH directly, and RGH has agreed to invoice us directly. These agreements were reached after this CO was issued. There is no need to approve a CO (which will generate an invoice) given that payment will not go through Whitney Homes. To the extent a CO is needed to show approval to incur the expense, that approval is granted here and in my email."

65.    After all payments and credits, Plaintiffs/cross-defendants Tim and Patricia Peden owe Whitney for breach of contract in the principal sum of **$43,946.72.**

66.    Whitney performed all items to be performed under its construction contract with Plaintiff, except as excused.

67.    During Whitney's involvement with the project, he provided to Plaintiffs access to Buildertrend to review his project details, notes, change orders, invoices. Such showed the state of construction when Whitney submitted invoices and when Peden paid them.

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

68. As sophisticated consumers, including an attorney and being represented by an attorney in reviewing proposed contracts during the project the Pedens fall outside the ambit of the persons for which the Legislature intended protection, as held in court decisions such as *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610 and *Hinerfield-Ward* v. *Latian* (2010) 188 CA4th 86, and to protect against unjust enrichment.

69. The HIC form itself expressly states that it does not negate the contractor's right to just compensation for work performed under legal and equitable remedies and to avoid unjust enrichment.

70. Here, the owners signed the construction contract and signed some 18 or more written change orders authorizing Whitney's work, constituting ratification of the contract, and also, waiver of any further requirements beyond the signed contract documents, as sufficient to proceed with the work.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT AGAINST PATRICIA PEDEN, TIM PEDEN

71. All prior paragraphs are incorporated herein by this reference.

72. As to the Construction Contract, **Exhibit 3** was signed by the Peden's and Whitney and states the terms of the Construction Agreement and its scope, subject to any change orders for extra work ordered by engineers, the County of Sonoma, or changes in site conditions. Though short, given the period of time up to its signing in which the parties were working together as designer and owner for the project, the contract had implied terms built into its express terms. Namely, that as recited in the construction agreement states "Fixed Costs" and "Unit Price" of "$175,200 for the following scope of work:

> Supply all labor, materials & equipment to build a retaining wall per approved plans, to include the following:
>
> Clear off, mark out, cut back hill side, clear out and excavate for new wall & post base footings, haul off included...
> Set up footings & wall approx. 68' long with various widths per details on [project structural drawing] S3...
> All rebar installation will be inspected prior to concrete pour...
> All necessary clean up work...
> All other work will be at an additional cost approved by owner & contractor prior to proceeding...

73. Within these terms, course of dealing and trade usage, these terms, signed by the Owners as the "Construction Agreement" expressly, also meant that the Owners would pay the stated price plus agreed change orders; and not interfere with the work or vendors, engineers or

subcontractors retained by Whitney Homes, or seek to take over their own subsidiary scopes of work as if in direct contract with the owners; the owners would not terminate the contract without major default and after opportunity to cure; not interfere with the critical work progress going into winter months; and pay the total contract price for the work adjusted by approved change orders and other, engineer directed work and services as reasonably required to proceed with the 68 feet of retaining wall and footings; and the owners would pay the contractor for the contract work. These were both express terms and agreed and mutually understood implied terms inherent in the express terms.

74.    Whitney performed all its promises, covenants and conditions in the Construction Agreement, except as excused.

75.    The owners, the Peden's, breached the construction agreement, inter-alia, by refusing to sign valid change orders, seeking to bypass Whitney's agreed 20% markup for his overhead and profit overseeing vendors and engineers with respect to the project and change order work, not paying Whitney in full for valid charges, going around his back directly to his team of persons under contract with Whitney for the project to seek to hire them away, and wrongfully terminating Whitney and the Construction Agreement.  As a result of the owner Pedens' breach of contract, Whitney has suffered damages in a sum according to proof, but no less than **$43,946.72 plus 10% per annum prejudgment interest as a liquidated sum, and calculated as follows: $43,946.72** is due after payments and credit for unperformed work on account of, and caused by, the breach of contract and specifically, wrongful termination and failure to pay in full for all progress work:

**Construction Contract - Accounting of Balance Due**[1]Base Construction Contract – 1.CO 09 3.1.2025 – Fixed Price:                                                    $175,000

Change Orders:                                                    $ 60,216

(CO's 11-13, 15, 17, 19-21)

2.  Total Adjusted Contract:                                                    **$235,216**

**Calculation of Portions performed v. portions not performed:**

A.        Partial Work Prior to Owner Termination (Wrongful):

$23,293.27 Galvin Exc. Work x 20% Agreed Markup $2,090

= $4,658.05 =                                                    $ 27,851.92

---

[1] This does not include the original design contract, of $7500, and change orders related to design work including engineering and County Fees. Those total $38,038.53 including the $7500 base design fee plus Change Orders #1-8, 10, 14, 16 and 18.

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

B. Personal Construction Project Management, M Whitney:  $ 53,105.00

(hourly rate of $215/hr x 247 hrs of project mgmt. time March- Dec 2015)

C. Subtotal:  $ 80,956.92

C. Total Adjusted Construction Price after Change Orders:  $235,216.00

D. Deduct Performed Work sum  ($80,956.92)

E. Resulting Unperformed Portion:  $154,259.03

F. 20% markup due on $154,259 (termination damages)  $ 30,851.8

G. Plus Sum performed:  $ 80,956.92

H. Total Due Performed and Unperformed (G+H)  $111,808.72

I. Less owner payments on Construction Contract:  ($ 65,000)

J. Subtotal Due for Breach of Contract:  $ 46,808.72

K. Add $3200 for Rebar Cost charge after Termination:  $ 3,200.00

L. Subtotal:  $ 50,008.72

M. Deduct CO 6062 (20% O/P on CO 15 piers already included in G):  ($6062)

N. **Total Due from Owners for Breach of Contract/Termination Damages: $43,946.72.**

## SECOND CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST PATRICIA PEDEN, TIM PEDEN

76. All prior paragraphs are incorporated herein by this reference.

77. All contracts in California have an implied covenant of good faith and fair dealing by each party not to deprive the other party of the benefits of the contract, whether by intrigue, repudiation, subterfuge, prevention, interference or other means.

78. In breach of the covenant of good faith and fair dealing owed towards Whitney, Tim and Patricia Peden have done the following improper and bad faith acts after gaining the benefit of Whitney's services, supervision, coordination, and project oversight, and securing his team of registered engineers, suppliers and contractors: *inter-alia*, by the Peden's refusing to sign valid change orders, seeking to bypass Whitney's agreed 20% markup for his overhead and profit overseeing vendors and engineers with respect to the project and change order work, not paying Whitney in full for valid charges, going around his back directly to his team of persons under contract with Whitney for the project to seek to hire them away, and wrongfully terminating Whitney and the Construction Agreement.

79.    As a result of such good faith covenant breach, Whitney has suffered damages owed to Whitney by the Peden's at least in the sum of **$43,946.72** in principal, and according to proof, plus interest at 10% per annum as a liquidated sum.

## THIRD CAUSE OF ACTION

### COMMON COUNT – REASONABLE VALUE OF SERVICES AND MATERIALS AGAINST PATRICIA PEDEN, TIM PEDEN

80.    All prior paragraphs are incorporated herein by this reference.

81.    As a common count for reasonable value of construction services, materials, oversight, supervision and coordination services, subcontractors and supply, Whitney has suffered damages owed to Whitney by the Peden's as an account stated, at least in the sum of $59,075.54, in principal, and according to proof, plus interest at 10% per annum as a liquidated sum.

82.    Said sum of **$43,946.72** if not ordered paid to Whitney, would result in inequitable unjust enrichment obtained by the Peden's for the construction improvements, and design and planning services rendered to them by Whitney, and at their special insistence and request.

## FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF - AGAINST PATRICIA AND TIM PEDEN

83.    All prior paragraphs are incorporated herein by this reference.

84.    A judiciable controversy exists in terms of the rights and obligations of the parties after Peden terminated Whitney from the project on December 3, 2025 during the rainy season, and suspended the project pier drilling and retaining wall work after the hillside excavation cut had occurred, and over Whitney's warnings to Peden (and to Peden's agents and engineers) to finish that work to avoid adverse hillside impacts from an open hillside cut, rain and moisture into the open cut hillside, and already known need to augment the initial retaining wall design with 18 added vertical, rebar reinforced piers. The added design revision of 18-new deep piers by the structural engineer and under a revised building permit due to the project engineers' assessment and design revision that their design needed an upgrade given hillside weakness discovered after the initial hillside excavation – essentially a differing site condition requiring a revised and upgraded design. The Owners stopping the work and terminating Whitney Homes on December 3, 2025, after telling Whitney not to proceed with the pier drilling.

85.    Specifically, as declaratory relief, Whitney seeks judgment for himself, and his subcontractors refused by Peden to continue, that they are relieved of any warranty and/or

13

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

liability, for the work under the project contract, and from any adverse impacts to the unfinished work occurring in 2006 and post-termination by the owners of Whitney Homes, as well as under the design contract, for the owner Peden's later owner-controlled events from December 2, 2023 forward, plus in 2026, as well as owner-controlled delays including their delays associated with the Encroachment permit which in 2024 they had promised to take care of but did not, and which are the subject of current and further design revisions, due to owner project take over by the termination of Whitney, and take over in November 2025 of further design scope and control over the project engineers, and failure to promptly and completely finish the added piers and retaining wall work after their take-over and halt of Whitney's work December 2-3, 2025.

86.    As declaratory relief, Whitney seeks judgment for himself, and his subcontractors refused by Peden to continue, that they are relieved of any warranty and/or liability for the work under the project contract, as well as design contract, for the owner Peden's later site events in 2026, and which are the subject of current and further design revisions, on account of Peden assumption of the risk.

87.    These declaratory judgment requests are equitable, and necessary to provide Whitney complete relief, and whether or not the owner Peden's termination of Whitney is without merit, or with merit, and there is no other legal means to obtain such relief except by such declaratory judgment.

88.    On information and belief, and based on written and oral communications from Plaintiffs' through their counsel of record, Peden plans to amend their own complaint to allege negligence by Whitney for the 2026 events post termination, just identified and as occurring solely on the owners' sole design watch and construction watch. This prayer is timely, and necessary to resolve this aspect of Whitney's duties or lack of duties, and as events subsequent to Peden's filing their underlying complaint herein, and not disclosed by Plaintiffs to Whitney Homes as of Whitney Homes initially filed Answer, which have only been discovered subsequently.

### **PRAYER FOR RELIEF**

Counter-claimant Whitney prays for damages and other relief as below:

1.    Compensatory damages in the sum of **$43,946.72** in principal;

2.    10% per annum prejudgment interest from the date of Whitney's service of its Supplemental Initial Disclosures on April 28, 2026;

3.    Declaratory Judgment as sought and prayed for in paragraphs 85 and 86 above;

4.    Costs of Suit;

MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

5. Trial by Jury;

6. That Plaintiffs take nothing by way of their own Complaint; and

7. And such other relief as just and proper.

Dated: June 29, 2026      **McNEIL, SILVEIRA, RICE & WILEY**

by_____
        MARK J. RICE
Attorneys for Defendant/Counter-Claimant Mark Whitney
dba Whitney Homes

### DEMAND FOR JURY TRIAL

Counterclaimant Mark Whitney, individually dba Whitney Homes, hereby demands jury trial in this Action, and pursuant to FRCP, Local Rules and the US and California Constitutions, and the Common Law.

Dated: June 29, 2026      **McNEIL, SILVEIRA, RICE & WILEY**

by_____
        MARK J. RICE
Attorneys for Defendant/Counter-Claimant Mark Whitney
dba Whitney Homes

15
MARK WHITNEY dba WHITNEY HOMES' COUNTERCLAIM FOR DAMAGES

# EXHIBIT 1



3558 Round Barn Blvd Ste 200   •   Santa Rosa, CA 95403   •   Phone: 800 425 4074

Patricia Peden
Phone: 510 693 3293

Job Address:
17543 Neeley Rd
Guerneville, CA 95446

Print Date:   4-4-2023

## 2023 Peden

Hi Patricia...

The other items we may need to consider for plan review & approval prior to construction...
1. Survey
2. Soil engineering
3. Structural engineering
4. Civil engineering

Pre-construction & course of construction:
Whitney Homes charges cost of work + 20% for profit/overhead...

| Items | Description | Qty/Unit | Unit Price | Price |
|---|---|---|---|---|
| Planning & Design 01100 Pre-Construction | Planning & Design for a new retaining wall, parking & new stairs... | 1 | $7,500.00 | $7,500.00 |

Total Price:   $7,500.00

Please let me know should you have any questions or concerns moving forward...

My best,

Mark Whitney, CEO
Whitney Homes

I confirm that my action here represents my electronic signature and is binding.



Signature: _____

Date:          Apr 4, 2023, 3:59 PM _____

Approved by:   Patricia Peden _____

EXHIBIT 2

# HOME IMPROVEMENT CONTRACT
### NOT APPLICABLE TO SWIMMING POOLS OR SPAS
*(Complies with Section 7159 of California Business and Professions Code, and Civil Code Section 8170 as amended)*
### AGREEMENT BETWEEN DIRECT CONTRACTOR AND PROPERTY OWNER
### The Notice of Cancellation may be mailed to the address of the direct contractor as shown below:

**And**

(Direct Contractor's Name) — (Property Owner's Name)

(Direct Contractor's License Number) — (Property Owner's Mailing Address)

(Direct Contractor's Address) — (City, State & Zip)

(City, State & Zip) — (Property Owner's Phone)

(Direct Contractor's Telephone - FAX) — (Property Owner's Fax)

**Email** _____ (Direct Contractor's)     **Email** _____ (Property Owner's)

**WORK TO BE PERFORMED AT:** _____ (Address) (City, State & Zip)

**CONSTRUCTION LENDER:** _____ (Name and Address of Construction Fund Holder)

**DESCRIPTION OF THE PROJECT AND DESCRIPTION OF THE SIGNIFICANT MATERIALS TO BE USED AND EQUIPMENT TO BE INSTALLED:** Direct Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner a: _____

(Describe Labor, Significant Materials, and Equipment to be Furnished. Include Materials and Equipment to be used or installed under this Contract. If necessary, continue the description of the work on an additional attachment page and describe the attachment in the section below entitled, "List of Documents to be Incorporated into the Contract.")

Substantial commencement of work under this contract is described as: _____

**Approximate Start Date:** _____ (Work will begin)     **Approximate Completion Date:** _____ (Work is to be completed)

**CONTRACT PRICE: $** _____ (Owner agrees to pay Contractor total cash price)     **DOWN PAYMENT: $** _____ (If any; if not applicable, put "none")

**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS.**

**FINANCE CHARGE $** _____ (Must be stated separately from the contract amount in dollars and cents; if none, put "none" )

**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)     (Date)

1. $ _____ _____ _____
2. $ _____ _____ _____
3. $ _____ _____ _____
4. $ _____ _____ _____

(If necessary, continue the description of the work on an additional attachment page and describe the attachment in the section below entitled, "List of Documents to be Incorporated into the Contract.")

**Release.** Upon satisfactory payment being made for any portion of the work performed, the Contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim of mechanic's lien for any person entitled to make such a claim of lien pursuant to Sections 8400 and 8404 of the Civil Code for that portion of the work for which payment has been made.

**Allowances:** The following items or specific prices as indicated are included in the contract price as allowances. The contract price shall be adjusted upward or downward based on actual amounts rather than estimated amounts herein _____

**List of Documents to be Incorporated into the Contract:** Notice of Cancellation; Arbitration of Disputes; Three-Day Right to Cancel; Five-Day Right to Cancel; Mechanics Lien Warning; Information about Contractor's State License Board. _____

**A notice concerning commercial general liability insurance and workers' compensation insurance is attached to this contract. Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above:** _____ (Property Owner's Initials)

**Owner affirms their age(s) is/are:** _____ ; _____ (Property Owner's Initials)     <span style="color:red">**Initial the appropriate box below:**</span>

| NOTICE OF RIGHT TO CANCEL 3-DAY | NOTICE OF RIGHT TO CANCEL 5-DAY (owners 65 and over) | ARBITRATION OF DISPUTES |
|---|---|---|
| The law requires that the contractor give you a notice explaining your right to cancel. **Initial the checkbox** if the contractor has given you a "Notice of the Three-Day Right to Cancel." | The law requires that the contractor give you a notice explaining your right to cancel. **Initial the checkbox** if the contractor has given you a "Notice of the Five-Day Right to Cancel." | **OWNER:** Initial this box **if you agree to arbitration.** Review the "Arbitration of Disputes" section attached. |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

**You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond.**

**X** _____ (Owner Sign Here -- Read notice on Arbitration, Mechanics Lien Warning)     _____ (Date)     Firm Name: _____ (Direct Contractor's Firm Name)

**X** _____ (If more than one Owner, please Sign Here)     _____ (Date)     Contractor or Agent: **X** _____ (Direct Contractor or Agent Sign Here)     _____ (Date)

**Salesman who solicited or negotiated contract:**

Name: _____     State Registration Number: _____

203    © 2021 Builder's Book, Inc.   Bookstore, Publisher.   All rights reserved.   www.buildersbook.com

# TERMS AND CONDITIONS

**1. Owner's Responsibilities.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture, driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

**2. Delays.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent, acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractors, or other causes beyond Contractor's reasonable control.

**3. Plans and Specifications.** If plans and specifications are prepared for this job, they shall be attached to and become a part of the Agreement. Contractor will obtain and pay for all required building permits, but Owner will pay assessments and charges required by public bodies and utilities for financing or repaying the cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

**4. Subcontracts.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

**5. Completion and Occupancy.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then Owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner.
This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

**6. Insurance and Deposits.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured, and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so, Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work.
Contractor shall carry Worker's Compensation Insurance for the protection of Contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

**7. Right to Stop Work.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement; Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.
Overdue payments will bear interest at the rate of 1½% per month (18% per annum).

**8. Clean Up.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

**9. Limitations.** No action of any character arising from or related to this contract, or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

**10. Validity and Damages.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

**11. Asbestos, Lead, Mold, and other Hazardous Materials.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter or microbiological contamination, mildew or fungus), or other hazardous materials.
Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work.
Unless the contract specifically calls for the removal, disturbance, or transportation of asbestos, polychlorinated biphenyl (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed.
In the event that mold or microbial contamination is removed by Contractor, Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor, for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination.
Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, Contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

**12. Standards of Materials and Workmanship.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

**13. Limited Warranty.** Contractor warrants that all work performed by it and its subcontractors shall be done in a good and workmanlike manner in accordance with accepted trade practices. Said warranty shall extend for one year from the date of substantial completion of Contractor's portion of the project. However, the warranties for assemblies, appliances and the like, shall be those warranties provided by the manufacturer or supplier of that item rather than based on Contractor's warranty herein. Contractor shall assemble and provide to Owner all such manufacturer's warranties.

**14. Changes in the Work - Concealed Conditions.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change Order shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment, subcontracts and materials, plus a Contractor's fee of 20% or _____% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.
Contractor shall promptly notify the Owner of (a) subsurface or latent physical conditions at the site differing materially from those indicated in the contract, or (b) unknown physical conditions differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this contract. Any expense incurred due to such conditions shall be paid for by the Owner as added work. Payment for extra work will be made as extra work progresses.

**15. Fees, Taxes and Assessments, Compliance With Laws.** Taxes, Permits, Fees, and assessments of all descriptions will be paid for by Owner. Contractor will obtain all required building permits, at the sole expense of Owner. Upon demand by Contractor, Owner shall provide ample funds to acquire any and all necessary permits on a timely basis. Owner will pay assessments and charges required by public bodies and utilities for financing or repaying the cost of sewers, storm drains, water service, schools and school facilities, other utilities, hook-up charges and the like. Contractor shall comply with all federal, state, county and local laws, ordinances and regulations.

**16. Labor and Material.** Contractor shall pay all valid charges for labor and material incurred by Contractor and used in the construction or repair of the Project. Contractor is excused from this obligation for bills received in any period during which the Owner is in arrears in making progress payments to Contractor  No waiver or release of mechanic's lien given by Contractor shall be binding until all payments due to Contractor when the release was executed have been made.

**17. Right to Cure.** In the event that Owner alleges that some of the work is not or has not been done correctly or timely, Owner shall give Contractor a notice that Contractor shall commence to cure the condition that Owner has alleged is insufficient within ten days.

203    © 2021 Builder's Book, Inc.   Bookstore, Publisher.   All rights reserved.   www.buildersbook.com

# FIVE-DAY RIGHT TO CANCEL (For owners 65 and over)

   You, the buyer, have the right to cancel this contract within five business days. You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the fifth business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

   If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received them, goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract."

I, _____ hereby acknowledge that on _____ I was provided this document
   (Owner)                                                                                                          (Date)

entitled "Five Day Right to Cancel"  **X** _____
                                                                                (Owner's Signature)

# THREE-DAY RIGHT TO CANCEL

   You, the buyer, have the right to cancel this contract within three business days. You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

   If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received them, goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract."

I, _____ hereby acknowledge that on _____ I was provided this document
   (Owner)                                                                                                          (Date)

entitled "Three Day Right to Cancel"  **X** _____
                                                                                 (Owner's Signature)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# 5-DAY NOTICE OF CANCELLATION (For owners 65 and over)

**DATE** _____

You may cancel this transaction, without any penalty or obligation, within five business days from the above date.

   If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

   If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

   If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to

_____ at _____
                (Name of Seller)                                             (Address of Seller's Place of Business)

not later than midnight of _____.
                                                  (Date)

I hereby cancel this transaction **X** _____     _____
                                                             (Buyer's Signature)                                             (Date)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# 3-DAY NOTICE OF CANCELLATION

**DATE** _____

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

   If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

   If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

   If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to

_____ at _____
                (Name of Seller)                                             (Address of Seller's Place of Business)

not later than midnight of _____.
                                                  (Date)

I hereby cancel this transaction **X** _____     _____
                                                             (Buyer's Signature)                                             (Date)

# STATUTORY NOTICES
### Information about the Contractors' State License Board (CSLB)

CSLB is the state consumer protection agency that licenses and regulates construction contractors.

Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions and civil judgments that are reported to CSLB.

Use only licensed contractors. If you file a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.

For more information:
Visit CSLB's Internet Web site at www.cslb.ca.gov
Call CSLB at 800-321-CSLB (2752)
Write CSLB at P.O. Box 26000, Sacramento, CA 95826.

*Check the applicable box*
# COMMERCIAL GENERAL LIABILITY INSURANCE (CGL)

**(A)** _____ **does not carry Commercial General Liability Insurance.**
(Contractor's Name)

**(B)** _____ **carries Commercial General Liability Insurance.**
(Contractor's Name)

**The insurance company is** _____.
(Company Name)

**You may call the insurance company at** _____ **to check the contractor's insurance coverage.**
(Telephone Number)

(C) _____ is self-insured.
(Contractor's Name)

(D) _____ is a limited liability company that carries liability insurance or maintains
(Contractor's Name)
other security as required by law. You may call _____ at _____ to
(Insurance Company/Trust Company/Bank)          (Telephone Number)
check on the contractor's insurance coverage or security.

*Check the applicable box*
# WORKERS' COMPENSATION INSURANCE

**(A) This contractor has no employees and is exempt from workers' compensation requirements.**

**(B) This contractor carries workers' compensation insurance for all employees.**

# NOTE ABOUT EXTRA WORK AND CHANGE ORDERS

**Extra Work and Change Orders** become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments.

You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order.

Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:
**(i)** The scope of work encompassed by the order.
**(ii)** The amount to be added or subtracted from the contract.
**(iii)** The effect the order will make in the progress payments or the completion date.
The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

# MECHANICS LIEN WARNING

**HOME IMPROVEMENT CONTRACT MECHANICS LIEN WARNING.** Anyone who helps improve your property, but who is not paid, may record what is called a mechanics lien on your property. A mechanics lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit.

To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a 'Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

**BE CAREFUL.** The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices.

You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

**PROTECT YOURSELF FROM LIENS.** You can protect yourself from liens by getting a list from your contractor of all the sub-contractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

**PAY WITH JOINT CHECKS.** One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier.

**For other ways to prevent liens,**
**visit CSLB's Internet Web site at www.cslb.ca.gov**
**or call CSLB at 800-321-CSLB (2752).**

**REMEMBER, IF YOU DO NOTHING, YOU RISK HAVING A LIEN PLACED ON YOUR HOME.**
This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe.

203    © 2021 Builder's Book, Inc.    Bookstore, Publisher.    All rights reserved.    www.buildersbook.com

# ARBITRATION OF DISPUTES
**(In compliance with CA Business and Professions Code 7191)**

ARBITRATION OF DISPUTES: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS CONTRACT, OR THE BREACH THEREOF, SHALL BE SETTLED BY BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS CONSTRUCTION INDUSTRY ARBITRATION RULES,  AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.  DISCOVERY IN ANY ARBITRATION SHALL BE LIMITED TO WHAT IS ALLOWED BY THE APPLICABLE ARBITRATION RULES AND THE ARBITRATOR'S POWERS ARE EXPRESSLY LIMITED TO THE  APPLICABLE RULES; WHERE THE RULES PROVIDE THAT DISCOVERY OR DEPOSITION MAY BE ALLOWED IN  EXTRAORDINARY CASES, IN THE INTERESTS OF JUDICIAL ECONOMY, THE  ARBITRATOR MAY NOT ORDER DISCOVERY BROADER THAN THAT ALLOWED IN A LIMITED CIVIL CASE  UNDER CODE OF CIVIL PROCEDURE SECTION 94.

ANY CLAIM FILED IN SMALL CLAIMS COURT SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO ARBITRATE, AND IF A COUNTER CLAIM IN EXCESS OF THE JURISDICTION OF THE SMALL CLAIMS COURT IS FILED IN THE MUNICIPAL OR SUPERIOR COURT, THEN THE PARTY FILING IN SMALL CLAIMS COURT MAY DEMAND ARBITRATION PURSUANT TO THIS PARAGRAPH.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE  COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER  APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

I AGREE TO ARBITRATION. _____       I AGREE TO ARBITRATION. _____
<small>(Direct Contractor's Initials)</small>                                                                                   <small>(Owner's Initials)</small>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# ARBITRATION OF DISPUTES
**(In compliance with CA Business and Professions Code 7191)**

ARBITRATION OF DISPUTES: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS CONTRACT, OR THE BREACH THEREOF, SHALL BE SETTLED BY BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS CONSTRUCTION INDUSTRY ARBITRATION RULES,  AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.  DISCOVERY IN ANY ARBITRATION SHALL BE LIMITED TO WHAT IS ALLOWED BY THE APPLICABLE ARBITRATION RULES AND THE ARBITRATOR'S POWERS ARE EXPRESSLY LIMITED TO THE APPLICABLE RULES; WHERE THE RULES PROVIDE THAT DISCOVERY OR DEPOSITION MAY BE ALLOWED IN EXTRAORDINARY CASES, IN THE INTERESTS OF JUDICIAL ECONOMY, THE  ARBITRATOR MAY NOT ORDER DISCOVERY BROADER THAN THAT ALLOWED IN A LIMITED CIVIL CASE  UNDER CODE OF CIVIL PROCEDURE SECTION 94.

ANY CLAIM FILED IN SMALL CLAIMS COURT SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO ARBITRATE, AND IF A COUNTER CLAIM IN EXCESS OF THE JURISDICTION OF THE SMALL CLAIMS COURT IS FILED IN THE MUNICIPAL OR SUPERIOR COURT, THEN THE PARTY FILING IN SMALL CLAIMS COURT MAY DEMAND ARBITRATION PURSUANT TO THIS PARAGRAPH.

NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER  APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

I AGREE TO ARBITRATION. _____       I AGREE TO ARBITRATION. _____
<small>(Direct Contractor's Initials)</small>                                                                                   <small>(Owner's Initials)</small>

# CUSTOMER ACKNOWLEDGMENT
**I hereby acknowledge receipt of the following documents or Notices:**

1. Home Improvement Contract
2. Notice of Arbitration
3. Notice Of Cancellation
4. Three-Day Right to Cancel
5. Five-Day Right to Cancel

6. Disclosure re: Commercial General Liability Insurance
7. Disclosure re: Workers' Compensation Insurance
8. Statutory Notices
9. Mechanics Lien Warning

Owner: _____          Owner: **X** _____          _____
<small>(Print Name of Owner)</small>                                                 <small>(Owner Sign Here)</small>                                        <small>(Date)</small>

**203**    © 2021 Builder's Book, Inc.    Bookstore, Publisher.    All rights reserved.    www.buildersbook.com

EXHIBIT 3



Printed: Apr 25, 2026
3558 Round Barn Blvd Ste 200, Santa Rosa, CA 95403
Phone: 707 387 1040

## Change Order

| Client Info | Tim & Patricia Peden | Job Info | 17543 Neeley Rd |
|---|---|---|---|
| | 17543 Neeley Rd | | Guerneville, CA 95446 |
| | Guerneville, CA 95446 | | |
| | Phone: 510 693 3293 | | |
| | Cell: 5107611115 | | |

| Change Order ID |
|---|
| 0009 |

## 2023 Peden

| CO ID | Created / Approved Date | | Price |
|---|---|---|---|
| 0009 | Created: | Feb 26, 2025 | $175,200.00 |
| | Approved: | Mar 1, 2025 | |

| Description |
|---|
| 2025.02.26 Construction Agreement |
| See scope of work for review & approval... |
| |
| Best, |
| |
| |
| **Mark Whitney, Owner** |
| **Whitney Homes** |

| Items | Cost Types | Description | Qty / Unit | Unit Price | Price |
|---|---|---|---|---|---|
| Construction Agreement 17100 Fixed Cost | Other | Supply all labor, materials & equipment to build a retaining wall per approved | 1 | $175,200.00 | $175,200.00 |

Buildertrend

| Items | Cost Types | Description | Qty / Unit | Unit Price | Price |
|---|---|---|---|---|---|
| | | plans, to include the following:<br><br>Clear off, mark out, cut back hill side, clear out and excavate for new wall & post base footings, haul off included...<br>Set up footings & wall approx. 68' long with various widths per details on S3... All rebar installation will be inspected prior to concrete pour... All necessary clean up work...<br><br>All other work will be at an additional cost approved by owner & contractor prior to proceeding... | | | |

| Status | Signature | Date |
|---|---|---|
| Approved by: Tim & Patricia Peden | | Mar 1, 2025, 11:42 AM |

| Approval Comments |
|---|
| |

I confirm that my action here represents my electronic signature and is binding.

|                                | |
|--------------------------------|---------------|
| TOTAL AMOUNT OF CHANGE ORDER:  | $175,200.00   |