United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TIMOTHY R PEDEN, et al.,<br>Plaintiffs,<br>v.<br>MARK WHITNEY, et al.,<br>Defendants. | Case No. 26-cv-00013-LB<br><br>**DISCOVERY ORDER**<br>Re: ECF Nos. 94–95 |

## INTRODUCTION

This is the parties' third discovery dispute. The plaintiffs, Timothy and Patricia Peden, hired the defendant Mark Whitney to build a retaining wall at their home, and they allege (among other claims) that he diverted payments earmarked for project vendors to other uses, constituting civil theft under California Penal Code § 484b and racketeering under 18 U.S.C. § 1962(c). Their Requests for Production (RFP) Nos. 7–10, 15, and 16 seek his financial records: proof of vendor payments, account statements, payment ledgers, bank statements, financial-condition records, and records showing the use of customer funds on active projects.[1] Whitney limited his production to records of the Pedens' own project, redacted about seventy-eight percent of the entries on the

[1] Disc. Letter Br. – ECF No. 95 at 2. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

credit-card statements he did produce, and stated that he would produce no further financial information.[2] The Pedens move to compel him to (1) produce unredacted credit-card and savings-account statements from January 2023 to the present, (2) produce documents showing receipts, payment dates, and vendor details for active projects over the same period (or state that none exist), and (3) serve counsel-signed amended responses with Bates ranges and verify the completeness of his production.[3]

Whitney opposes the requests mainly on proportionality grounds. He contends that (1) there is no waiver of his objections because good cause excuses his late responses, (2) he has produced the "core accounting evidence" (which shows, he says, that every Peden-project vendor ultimately was paid), and (3) the Pedens demand "an unrestricted examination of [his] banking, expenses, financial condition, and unrelated customer projects." He asks the court to deny the requests as framed or to impose "transaction-specific limits within the current protective order."[4]

The court grants the motion on the terms of the Pedens' proposal, largely for the reasons in its July 10, 2026 discovery order. First, Whitney waived his objections by serving his responses twenty-six days late: the circumstances he identifies — he was pro se when the requests were served, and his new counsel responded twelve days after appearing — are not good cause for missing the deadline. Second, waiver aside, the objections fail on the merits. The records are relevant: only Whitney's unredacted records can show what he did with vendor-designated funds, which is the heart of the theft and RICO claims, and his financial condition is discoverable on the punitive-damages prayer without a prima facie showing. The protective order answers his privacy objection, and his unilateral relevance redactions withhold the evidence that the claims put in issue: the non-project uses of project money. And the discovery is proportional: two defined

---

[2] *Id.* at 2–3; Peden Decl. – ECF No. 95-1 at 3–4 (¶¶ 13–14); RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9.

[3] Disc. Letter Br. – ECF No. 95 at 4 (requested relief).

[4] *Id.* at 4–6. The letter identifies Michael A. Di Lando as a lead attorney for the defendants but bears no signature from him. *Id.* at 1. Mr. Rice, who represents Whitney and served the discovery responses at issue, signed and attests to the parties' meet-and-confer, and the court treats the letter as compliant with its standing order.

categories of records, over a period that matches the pleaded scheme, are not a "general financial audit." Within fourteen days, Whitney must produce the records, serve counsel-signed amended responses identifying his production by Bates range, and verify the production's completeness by declaration. He may designate the records under the protective order. The court also grants the Pedens' administrative motion to seal Exhibit C to the Peden declaration.

**STATEMENT**

The court set out the project's history in its earlier orders and repeats only what matters here.[5] The Pedens hired Whitney, a licensed contractor doing business as Whitney Homes, in 2023, and terminated him mid-project in December 2025.[6] The operative First Amended Complaint alleges that Whitney billed customers for subcontractor and vendor costs, collected the money, and put it to other uses: personal expenses, other projects, older obligations. It asserts fifteen claims, including theft by diversion of construction funds (claim five), civil RICO (claim eleven), and fraud claims carrying a punitive-damages prayer (claims six, seven, and nine).[7] The Pedens allege that Whitney diverted $65,000 in advance draws and $34,059.20 in vendor-designated payments on their project alone, and that the scheme "recurred across projects spanning at least 2022 [] through 2026."[8] In its July 10 order, the court compelled Whitney to answer Interrogatory No. 1 (asking for his customers from the last ten years): he had waived his objections by responding late without good cause, and other-customer discovery is relevant to the continuity element of the RICO claim.[9] No motion challenges the theft or RICO claims. The pending motion to dismiss concerns Whitney's counterclaims.[10]

---

[5] Order – ECF No. 55 at 2–3; Order – ECF No. 71 at 2–4; Order – ECF No. 78 at 2–3.

[6] First Am. Compl. (FAC) – ECF No. 51 at 2 (¶¶ 7–8), 11 (¶ 41).

[7] *Id.* at 8–14 (¶¶ 33–50), 14–27 (¶¶ 51–131), 27–28 (prayer). The punitive-damages prayer attaches to the fraudulent-misrepresentation, fraudulent-concealment, and Consumers Legal Remedies Act claims.

[8] *Id.* at 11–12 (¶¶ 44, 67–68), 12 (¶ 46), 14 (¶ 50); Disc. Letter Br. – ECF No. 95 at 2.

[9] Order – ECF No. 55 at 5–9.

[10] Second Mot. to Dismiss Countercls. – ECF No. 91; Opp'n to Second Mot. to Dismiss – ECF No. 93; *see* Answer – ECF No. 12 (answering the original complaint without moving to dismiss); Am. Answers – ECF Nos. 89, 90.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Pedens served their first set of RFPs on March 24, 2026, making responses due April 23. Six requests matter here: they seek proof of vendor payments (No. 7), account statements (No. 8), payment ledgers (No. 9), bank statements from April 2023 to December 2025 (No. 10), records of financial condition (No. 15), and records of customer-fund use on active projects (No. 16).[11] Nos. 8 and 10 state that Whitney "may redact [his] bank account number and social security number if present on the statement"; the requests contemplate no other redactions.[12] Whitney, then pro se, did not respond by the deadline. His current counsel, Mark Rice, appeared on May 7. The Pedens' counsel had flagged the overdue responses the day before, and an earlier defense attorney had been sent the requests on April 6. Mr. Rice served responses on May 19, twenty-six days late.[13] The responses objected to the requests (except No. 7) on grounds of overbreadth, burden, relevance, and privacy, and committed to produce only entries showing the Pedens' payments to Whitney and Whitney's payments to Peden-project vendors, and not "deposits from other projects, or withdrawals and payments out of the account not related to project vendor payments."[14]

The parties met and conferred by videoconference on September 24, 2026, and on October 12, Whitney's counsel committed by email to produce unredacted business-bank records for the duration of the Pedens' project.[15] As of the letter brief, Whitney had produced 6,724 records in response to the Pedens' three sets of RFPs (forty-nine requests in all). His counsel attests that the production includes (1) unredacted statements for Whitney Homes's business bank account and business line of credit from January 2023 to May 2026, (2) credit-card statements for the same period showing Peden-project vendor charges, "with unrelated entries redacted," and (3) Buildertrend reports showing customer invoices and payments from February 2021 to the

[11] Peden Decl. – ECF No. 95-1 at 1–2 (¶ 2); RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9; Disc. Letter Br. – ECF No. 95 at 2.

[12] RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9 (Nos. 8 and 10).

[13] Peden Decl. – ECF No. 95-1 at 1–2 (¶¶ 2–3); Disc. Letter Br. – ECF No. 95 at 3, 6; Rice Decl. – ECF No. 95-2 at 2–3 (¶¶ 2–3, 5).

[14] RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9; Peden Decl. – ECF No. 95-1 at 2 (¶ 4).

[15] Peden Decl. – ECF No. 95-1 at 2 (¶¶ 6, 9); Disc. Letter Br. – ECF No. 95 at 6.

present.[16] Counsel represents that all available Peden-project records have been produced and that the records show that every Peden-project vendor ultimately was paid.[17]

The Pedens dispute the scope and the completeness of that production. The produced records are limited to their project, and about seventy-eight percent of the credit-card entries are redacted. For example, on a sample statement page, fifty-eight of sixty-six entries are blacked out.[18] No statements have been produced for Whitney's savings account, for cards paid from the business account, or for months after November 2025, and Whitney does not use Buildertrend to track vendor payments.[19] The Pedens add that Whitney's discovery history is reason to distrust unverified claims of completeness: he omitted customers from his Interrogatory No. 1 response until they identified the omissions.[20]

All parties consented to magistrate-judge jurisdiction.[21]

## LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017)

---

[16] Rice Decl. – ECF No. 95-2 at 3–4 (¶ 6), 5 (¶ 7); Disc. Letter Br. – ECF No. 95 at 4.

[17] Rice Decl. – ECF No. 95-2 at 6 (¶ 10); Disc. Letter Br. – ECF No. 95 at 4.

[18] Peden Decl. – ECF No. 95-1 at 3–4 (¶¶ 13–14); Redacted Statement, Ex. C to Peden Decl. – ECF No. 94-2 at 1 (filed under seal); Rice Decl. – ECF No. 95-2 at 3–4 (¶ 6) (the redactions rest on "privacy" and "lack of relevance").

[19] Peden Decl. – ECF No. 95-1 at 3–4 (¶¶ 11–12, 14); RFP Nos. 38, 39, & 40, Ex. B to Peden Decl. – ECF No. 95-1 at 11–12.

[20] Disc. Letter Br. – ECF No. 95 at 3; Order – ECF No. 55 at 3, 8.

[21] Consents – ECF Nos. 7, 27, 65, 66; 28 U.S.C. § 636(c); *see* Scheduling Order – ECF No. 34 (fact discovery closes January 8, 2027). The court decides the dispute without a hearing. Civil L.R. 7-1(b).

(cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). "[T]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). The court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

Responses to requests for production are due within thirty days of service unless the parties stipulate or the court orders otherwise. Fed. R. Civ. P. 34(b)(2)(A). A failure to timely object to discovery requests is a waiver of any objection, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), unless the court excuses the failure for good cause, *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). In weighing good cause, courts consider the length of the delay, the reason for it, bad faith, prejudice to the party seeking the discovery, the nature of the request, and the harshness of the waiver. *LegalForce RAPC Worldwide P.C. v. Demassa*, No. 18-cv-00043-MMC (TSH), 2019 WL 2232580, at *1 (N.D. Cal. May 23, 2019); *Gaby's Bags, LLC v. Mercari, Inc.*, No. 20-cv-00734-WHA (TSH), 2021 WL 1713848, at *5 (N.D. Cal. Apr. 30, 2021).

## ANALYSIS

### 1. Whitney Waived His Objections

The timeline is undisputed: the requests were served March 24, 2026, the responses were due April 23, and Whitney served them May 19, with no stipulation extending his time and no motion

for an extension.[22] Under *Richmark*, the late responses waive Whitney's objections unless good cause excuses the failure. 959 F.2d at 1473.

Whitney now makes a good-cause showing — something he did not attempt in the Interrogatory No. 1 dispute — so the court considers it. It does not excuse the default.[23] Whitney says that he was unrepresented when the requests were served, that an earlier defense attorney "had been sent" the requests (so he "understood that any extension had been secured"), and that Mr. Rice, who learned of the requests when he appeared on May 7, served responses in good faith twelve days later.[24] Pro se litigants must follow the same procedural rules as represented parties. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). And Whitney was no stranger to his obligations: he had answered the complaint pro se and (belatedly) responded to the Pedens' interrogatories, and nothing in the record shows that he (or anyone acting for him) asked the Pedens for more time.[25] A mistaken belief that someone else secured an extension is not an extension. Counsel's diligence after May 7 is creditable, but it concerns conduct after the deadline, not cause for missing it. (Whitney's vision impairment and his September 2026 surgery explain later delays in collecting supplemental records, but he concedes that they "do not excuse April's original deadline."[26])

Whitney's fallback — that Rule 34, unlike Rule 33(b)(4), has no express waiver provision, so waiver is discretionary, *Hall v. Sullivan*, 231 F.R.D. 468, 474–75 (D. Md. 2005) — does not change the outcome. *Richmark* states this circuit's rule for "discovery requests" generally, and courts in this district apply it to document requests. 959 F.2d at 1473; *Gaby's Bags*, 2021 WL 1713848, at *5. Exercising whatever discretion it has, the court reaches the same result: the delay

---

[22] Peden Decl. – ECF No. 95-1 at 1–2 (¶¶ 2–3); Disc. Letter Br. – ECF No. 95 at 3, 6.

[23] *Cf.* Order – ECF No. 55 at 5–6 (Whitney did "not contend that good cause exists" and offered no explanation for the delay).

[24] Disc. Letter Br. – ECF No. 95 at 6.

[25] Answer – ECF No. 12; Order – ECF No. 55 at 3, 5–6. The Pedens also notified Mr. Rice of the overdue responses within a day of his appearance. Disc. Letter Br. – ECF No. 95 at 3; Rice Decl. – ECF No. 95-2 at 2–3 (¶¶ 2–3, 5).

[26] Disc. Letter Br. – ECF No. 95 at 6; Rice Decl. – ECF No. 95-2 at 5 (¶ 8).

was substantial, no one sought an extension, and the default repeated the pattern of the interrogatory responses. The harshness of waiver — the factor that gives the court the most pause, given the breadth of the discovery — is tempered here because the objections also fail on the merits: the court would order the same production with or without waiver, as the next sections explain.[27]

**2. The Records Are Relevant to the Theft and RICO Claims and to Punitive Damages**

Even without objections, the court must satisfy itself that the discovery is relevant and proportional. Fed. R. Civ. P. 26(b)(1). Relevance is measured against the operative pleading: the theft and RICO claims are live, no motion challenges them, and a discovery letter brief is not the vehicle for contesting their merits.[28]

**2.1 The Theft Claim**

Theft by diversion of construction funds turns on what a contractor did with money he received for a designated purpose: the statute reaches a contractor who "wrongfully diverts the funds to a use other than that for which the funds were received." Cal. Penal Code § 484b. The Pedens allege exactly that: vendor-designated payments that did not reach the designated vendors within the required time, or at all, because Whitney put the money to other uses.[29] Whitney's unredacted account, credit-card, and ledger records are the only direct evidence of what happened to the funds between receipt and disbursement. The plaintiffs' accounting expert needs them to trace whether earmarked money paid vendors, personal expenses, or other projects' obligations.[30] Where "the financial information goes to the heart of the cause of action itself," discovery follows. *Rawnsley v. Superior Court*, 183 Cal. App. 3d 86, 91 (1986); *accord AJY Int'l, Inc. v. Paldo Co.*,

---

[27] The Pedens separately argue that Whitney waived privilege by serving his first privilege log on October 8, 2026 (months late under the court's standing order), citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Disc. Letter Br. – ECF No. 95 at 3; Suppl. Priv. Log, Ex. 1 to Rice Decl. – ECF No. 95-2 at 9–14. The redactions at issue rest on privacy and relevance, not privilege, so the court need not reach log-based waiver.

[28] Order – ECF No. 55 at 7–8; *see supra* Statement.

[29] FAC – ECF No. 51 at 11–12 (¶¶ 44, 67–68); Disc. Letter Br. – ECF No. 95 at 2.

[30] Disc. Letter Br. – ECF No. 95 at 2; Peden Decl. – ECF No. 95-1 at 2 (¶ 7).

No. 17-cv-00744-VC (LB), 2017 WL 3588241, at *2–4 (N.D. Cal. Aug. 19, 2017) (compelling financial-condition discovery); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW (RS), 2008 WL 4858502, at *3–5 (N.D. Cal. Nov. 10, 2008) (compelling financial records to test commingling and siphoning).

Whitney's answer is that the theft claim is "moot" because "the project vendors have all been paid and shown as paid."[31] That argument fails. It is a merits argument, and the court does not decide the merits on a letter brief (and the Pedens also plead that Whitney still holds at least $65,000 of their money).[32] And ultimate payment does not answer a diversion claim, which turns on what Whitney did with earmarked funds when he received them: the Pedens' theory is that he covered old obligations with new money and paid some vendors only after this lawsuit. Statements with the non-Peden entries redacted cannot confirm or refute that theory, because the redactions obscure exactly where the money went.[33]

**2.2 The RICO Claim**

The court has already held that Whitney's other customers are relevant to the continuity element of the RICO claim.[34] Records showing the use of customer funds on active projects are the next step of the same theory: they tend to show whether the alleged practice (collecting vendor-designated draws and withholding payment) is "part of an ongoing entity's regular way of doing business." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Transfers between Whitney Homes's accounts and Whitney's personal accounts also bear on the enterprise element: a sole owner is legally distinct from his corporation, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163–65 (2001), and the flow of funds across the business and personal accounts is evidence of how Whitney allegedly used the corporate form.[35] His rejoinder (that there is no

---

[31] Disc. Letter Br. – ECF No. 95 at 4.

[32] *Id.* at 2; FAC – ECF No. 51 at 10–11 (¶¶ 38, 42).

[33] Disc. Letter Br. – ECF No. 95 at 2–3; Peden Decl. – ECF No. 95-1 at 3–4 (¶¶ 13–14).

[34] Order – ECF No. 55 at 7–9.

[35] Disc. Letter Br. – ECF No. 95 at 2, 4; FAC – ECF No. 51 at 23 (¶¶ 104(j), 105); Answer (Whitney Homes) – ECF No. 69 at 4 (¶ 8) (the "one man band" contention).

United States District Court
Northern District of California

enterprise because Whitney Homes is a "one-man band") is another merits argument that does not narrow discovery on the claim as pleaded.

Nor are there adequate substitutes. Fed. R. Civ. P. 26(b)(2)(C)(i). Third-party subpoenas to other customers can show what those customers paid Whitney, but they cannot show what Whitney did with the money. The produced Buildertrend reports have the same gap: Whitney does not use Buildertrend to track vendor payments. Only his financial records hold that information. Subpoenaing the owners and vendors of at least nine disputed projects would be more burdensome and more intrusive, not less, than one party's production of his own records.[36]

### 2.3 Punitive Damages

RFP No. 15 reaches Whitney's financial condition, which is relevant to the Pedens' punitive-damages prayer. *Vieste, LLC v. Hill Redwood Dev.*, No. C 09-04024 JSW (DMR), 2011 WL 855831, at *1 (N.D. Cal. Mar. 9, 2011) (net worth and financial condition are "clearly relevant" to punitive damages); *Todd v. AT&T Corp.*, No. 16-cv-03357-HSG (MEJ), 2017 WL 1398271, at *1 (N.D. Cal. Apr. 19, 2017). A plaintiff need not first make a prima facie showing of entitlement: that is the majority federal rule, and California Civil Code § 3295 does not govern discovery in federal court. *Vieste*, 2011 WL 855831, at *2 (collecting cases); *LL B Sheet 1, LLC v. Loskutoff*, No. 16-cv-02349-BLF (HRL), 2016 WL 7451632, at *2 (N.D. Cal. Dec. 28, 2016); *Bradley Tr. v. Zenith*, 2005 WL 1030218, at *3 (N.D. Cal. May 3, 2005). The court therefore denies Whitney's request to defer this discovery until some showing is made.[37]

Whitney's narrower point — that only his current financial condition matters, citing *Vieste* (limiting discovery to current circumstances) and *LL B Sheet* (trimming five years of accounting records to two) — does not change the outcome. No. 15 is not only net-worth discovery. Documents showing overdrafts, defaults, and cash-flow problems during the scheme period are

---

[36] Disc. Letter Br. – ECF No. 95 at 4–5 (nine projects with disputed vendor invoices); Peden Decl. – ECF No. 95-1 at 3 (¶ 11) & Ex. B to *id.* – ECF No. 95-1 at 5–13.

[37] RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 8 (No. 15); Disc. Letter Br. – ECF No. 95 at 2, 5–6 (production under No. 15 "should be denied for the time being until prima facie showing of statutory violation is made or limited to current net-worth materials").

evidence of the alleged practice of satisfying old obligations with new customers' money, so discovery back to January 2023 is relevant to liability, not just punitive damages.

### 3. Privacy and the Redactions Do Not Justify Withholding

Whitney invokes his financial privacy both as an objection and as the basis for his redactions.[38] Financial privacy is a real interest, but it is not a privilege that defeats discovery: courts weigh the need for the records against the intrusion and consider whether a protective order mitigates it. *AJY*, 2017 WL 3588241, at *2 (there is "no absolute privacy right" precluding financial discovery); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (no federal common-law privacy privilege); *Del Campo*, 2008 WL 4858502, at *4–5. In July, the court held that the protective order sufficiently protects the privacy of Whitney's non-party customers. That holds true for Whitney's records too: he is the defendant, his use of customer funds is the subject of the claims, and he identifies no concrete harm that designation under the protective order does not answer.[39]

The redactions are a separate problem. Courts disfavor unilateral relevance redactions within responsive documents because the practice "gives rise to suspicion that relevant material harmful to the producing party has been obscured." *Kellman v. Whole Foods Mkt. Cal., Inc.*, No. 17-cv-06584-LB, 2021 WL 4476779, at *2 (N.D. Cal. Sep. 30, 2021) (cleaned up). The requests here allowed redaction of account and Social Security numbers, but nothing else.[40] Whitney cites *Palmer v. HSBC Bank, USA, N.A.*, No. 22-CV-02178-VC (LB), 2022 WL 3335932 (N.D. Cal. Aug. 12, 2022), for a narrow exception permitting redaction of unrelated private information within otherwise responsive banking records.[41] *Palmer* does not change the outcome in this case.

---

[38] RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9; Rice Decl. – ECF No. 95-2 at 3–4 (¶ 6); Disc. Letter Br. – ECF No. 95 at 5.

[39] Order – ECF No. 55 at 6, 8–9; Protective Order – ECF No. 37. If a production implicates a third party's confidentiality, the protective order provides for notice. Protective Order – ECF No. 37 (¶ 9(b)–(c)); Disc. Letter Br. – ECF No. 95 at 3.

[40] RFP Resps., Ex. A to Peden Decl. – ECF No. 95-1 at 6–9; *see supra* Statement.

[41] Disc. Letter Br. – ECF No. 95 at 5 (citing *Palmer*, No. 22-cv-02178-VC (LB), ECF No. 153, at 6–7); *id.* at 3 (the Pedens' reading of *Palmer*).



United States District Court
Northern District of California

United States District Court
Northern District of California

In *Palmer*, one individual claim remained, and the plaintiff gave the court no details about the redactions. *Id.* at *2–4. Here, the claims put the "unrelated" entries themselves in issue: the theory is that Whitney diverted project funds to personal and other non-project uses, and the non-project entries are the alleged destination of the money. Redacting them withholds the evidence the requests seek. Whitney may redact account numbers and Social Security numbers, as the requests provide, and nothing else.

**4. The Discovery Is Proportional, and Whitney Has Not Shown Undue Burden**

Whitney's principal argument is proportionality: Rule 26, he says, "does not authorize a general financial audit based on speculation."[42] In *Sanders*, the court rejected an audit of a non-party's unrelated financial dealings while permitting targeted banking discovery. *Sanders v. Transamerica Life Ins. Co.*, No. 25-cv-09517-VC (LB), 2026 WL 2395234, at *5 (N.D. Cal. Aug. 17, 2026). Both parties cite *Sanders* here.[43] But the relief ordered below is not an audit. It is the Pedens' narrowed proposal: identified account statements, unredacted, and fund-use records for active projects, over a period (January 2023 forward) that is tethered to the pleading. The Pedens first hired Whitney in 2023, and the FAC pleads a scheme that "recurred across projects spanning at least 2022 [] through 2026" and is ongoing.[44] And unlike the non-party in *Sanders*, Whitney is the defendant (and a counterclaimant): his use of customer funds is what the case is about, and the records sought are relevant to the dispute.

The Rule 26(b)(1) factors support the discovery. The issues are a federal racketeering claim and statutory theft. The amount in controversy includes treble and punitive damages. Only Whitney has his records, and only they show the use of funds, so the discovery is important to resolving the claims. Against that, Whitney's burden showing is not particularized. *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145–46 (D. Nev. 2015); *Farber*, 234 F.R.D. at 188

---

[42] Disc. Letter Br. – ECF No. 95 at 4.

[43] *Id.* at 3 (the Pedens' reading of *Sanders*), 5 (Whitney's).

[44] FAC – ECF No. 51 at 14 (¶ 50); Order – ECF No. 55 at 2–3; Disc. Letter Br. – ECF No. 95 at 4 (requested relief).

(boilerplate burden objections, unsupported by evidence, carry no weight). His counsel's declaration reports about eighty paralegal hours producing 6,724 records across all forty-nine requests to date, but it does not apportion any time to the six requests at issue or estimate the cost of producing the statements unredacted.[45] If anything, the record shows that the redactions are the expensive part: counsel attributes the production delays to redaction work, so producing designated, unredacted statements under the protective order is less work, not more.[46] Whitney's solo operation and his 2026 medical treatment explain the timing of his production, but they do not make the production of bank-generated statements an undue burden.[47]

The active-projects category (RFP No. 16) is not disproportionate merely because Whitney has identified only nine past projects with disputed vendor invoices. Limiting production to a universe Whitney selects would repeat the problem the court addressed in July, when his interrogatory response omitted customers until the Pedens identified the omissions. The point of the discovery is to test the pleaded pattern against his records, not against his characterization of them.[48] His proposed "transaction-specific limits" are his redaction practice under another name, and the court declines to adopt them. The protective order is the mechanism for confidentiality.

**5. Amended Responses, Verification, and Timing**

Whitney must also serve amended, counsel-signed responses to RFP Nos. 7–10, 15, and 16 that state what he is producing (identified by Bates range) and whether anything is being withheld. Fed. R. Civ. P. 34(b)(2)(B)–(C); Fed. R. Civ. P. 26(g).[49] And the parties' competing accounts of what has been produced — the savings-account statements, the statements for cards paid from the business account, and the months after November 2025 — need a verified answer, not another

---

[45] Rice Decl. – ECF No. 95-2 at 3–5 (¶¶ 6–7); Peden Decl. – ECF No. 95-1 at 3 (¶ 10).

[46] Rice Decl. – ECF No. 95-2 at 3–4 (¶ 6); Disc. Letter Br. – ECF No. 95 at 3–4.

[47] Disc. Letter Br. – ECF No. 95 at 6; Rice Decl. – ECF No. 95-2 at 5 (¶ 8).

[48] Disc. Letter Br. – ECF No. 95 at 4 (responses to 165 requests for admission; 33 past projects; nine with disputed vendor invoices); Order – ECF No. 55 at 3, 8.

[49] The Pedens ask for this relief, Disc. Letter Br. – ECF No. 95 at 4, and Whitney does not separately oppose it.

United States District Court
Northern District of California

letter brief. As with the interrogatory response in July, Whitney must serve a declaration attesting to the completeness of his production.[50] The deadline is fourteen days, as the Pedens propose. The statements are bank-generated and largely collected already. The produced versions were redacted from them. The schedule (a November mediation window and a January 8, 2027 fact cutoff) leaves no room for the open-ended "staged process" that Whitney proposes without dates.[51]

**6. The Administrative Motion to Seal**

The Pedens filed one page of a produced credit-card statement as Exhibit C to the Peden declaration and, because Whitney designated it confidential under the protective order, moved to consider whether it should be sealed.[52] Good cause is the standard for sealing material attached to a non-dispositive discovery motion. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006); Civil L.R. 79-5. The page is an account-level financial record showing individual transactions, the request is narrowly tailored to a single exhibit, and the court's analysis does not rest on any sealed detail. The court grants the motion to seal Exhibit C (ECF No. 94-2).

**CONCLUSION**

The court grants the motion to compel. Within fourteen days of this order, Whitney must (1) produce unredacted credit-card and savings-account statements from January 2023 to the present (including statements for all cards paid from the business account), redacting only account numbers and Social Security numbers, (2) produce documents showing receipts, payment dates, and vendor details for active projects from January 2023 to the present, or state that none exist, (3) serve counsel-signed amended responses to RFP Nos. 7–10, 15, and 16 that identify the produced

[50] Peden Decl. – ECF No. 95-1 at 3–4 (¶¶ 12, 14); Rice Decl. – ECF No. 95-2 at 6 (¶ 10); Order – ECF No. 55 at 9.

[51] Disc. Letter Br. – ECF No. 95 at 4, 6; Stipulation & Order – ECF No. 61 (ADR deadline continued to November 20, 2026); Min. Entry – ECF No. 88; Scheduling Order – ECF No. 34.

[52] Admin. Mot. to Seal – ECF No. 94; Redacted Statement, Ex. C to Peden Decl. – ECF No. 94-2 (designated "CONFIDENTIAL UNDER PROTECTIVE ORDER"); Protective Order – ECF No. 37.

documents by Bates range and state whether anything is withheld, and (4) serve a declaration attesting to the completeness of his production. Whitney may designate the produced records as appropriate under the protective order. The court also grants the administrative motion to seal: Exhibit C (ECF No. 94-2) remains under seal.

This resolves ECF Nos. 94 and 95.

**IT IS SO ORDERED.**

Dated: November 2, 2026



LAUREL BEELER
United States Magistrate Judge