United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

TIMOTHY R PEDEN, et al.,
Plaintiffs,
v.
MARK WHITNEY, et al.,
Defendants.

Case No. 26-cv-00013-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 91

## INTRODUCTION

Plaintiffs Timothy and Patricia Peden hired defendant Mark Whitney to build a retaining wall at their hillside home in Guerneville, California, and terminated him mid-project in December 2025. The Pedens sued Whitney, and Whitney counterclaimed for breach of the parties' Construction Agreement (claim one), breach of the implied covenant of good faith and fair dealing (claim two), a common count for the reasonable value of his services and materials (claim three), and declaratory relief (claim four).[1] In August, the court dismissed claim four with prejudice, dismissed claim two and claim three's account-stated theory with leave to amend, and held that

[1] Compl. – ECF No. 1; First Am. Compl. – ECF No. 51; Countercls. – ECF No. 48 at 10–14 (¶¶ 71–88). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

claim three's reasonable-value and unjust-enrichment theories survive as alternative claims.[2] To replead the implied-covenant claim, Whitney had to "identify bad-faith conduct during performance that frustrated a contractual benefit distinct from the unpaid sums that claim one already seeks."[3]

Whitney timely amended. The amended implied-covenant claim disclaims reliance on claim one's breach allegations and pleads four theories: the Pedens (A) terminated Whitney "without fair notice to cure," (B) promised to secure a county encroachment permit, did not do so, and did not disclose the lapse, resulting in a red tag and delays, (C) ignored his December 2025 warnings to secure the open hillside cut, denied him site access after the termination, and hired a replacement rebar fabricator, and (D) "[i]nterpret[ed] (and therefore repudiat[ed])" the contract's fixed price by refusing to credit his project-management time and accusing him of overbilling. The claim seeks the same $43,946.72 that claim one seeks. The amended pleading also repeats the dismissed account-stated allegation word for word.[4] The Pedens moved again, this time asking the court to dismiss the account-stated theory and claim two with prejudice or, in the alternative, to require Whitney to replead sub-parts (B) and (C) with facts and damages.[5]

The court grants the motion. Whitney concedes that the account-stated reference was an "inadvertent inclusion" that "can be struck": the court strikes it and dismisses the theory with prejudice, which means that claim three survives on its reasonable-value and unjust-enrichment theories.[6] The amended implied-covenant claim fails for the reasons the prior order gave. Each theory restates claim one's breaches, asks the covenant to supply terms that the three-sentence contract does not contain, or attacks conduct after the contract ended, and the claim pleads no injury distinct from the unpaid sums that claim one seeks. Whitney amended his claims but did not

---

[2] Order – ECF No. 71 at 2, 7–10.

[3] *Id.* at 7.

[4] First Am. Countercl. (FACC) – ECF No. 74 at 10–15 (¶¶ 71–82); *id.* at 12–14 (¶ 78(A)–(D)), 14 (¶ 79), 14–15 (¶¶ 81–82).

[5] Mot. – ECF No. 91 at 5–6, 20; Reply – ECF No. 96 at 19.

[6] Opp'n – ECF No. 93 at 5–7; Reply – ECF No. 96 at 6.

cure the deficiencies that the court identified previously or identify any fact he could add. He is able to litigate his grievances through claim one and his affirmative defenses. The dismissal is therefore with prejudice.[7]

**STATEMENT**

**1. The Prior Order**

The court's August 27, 2026 order recounts the project's history: the fixed-price Construction Agreement, the change orders that expanded the work (including eighteen drilled piers added after the hillside proved weaker than expected), the Pedens' December 3, 2025 termination of Whitney, and the lawsuits that followed.[8] Relevantly here, the order dismissed Whitney's original implied-covenant claim because it was "claim one (for breach of contract), restated": it rested on the same acts that Whitney pleaded as breaches in claim one (the Pedens' refusal to sign change orders, their attempt to bypass Whitney's twenty-percent markup, nonpayment, direct dealing with his team, and the termination) and sought the same $43,946.72. The order also held that the Pedens' declining change orders was conduct the contract expressly permitted, and a party "cannot be held liable on a bad faith claim for doing what [he] is expressly permitted" to do. *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) (cleaned up).[9] The court rejected Whitney's argument that the agreement's brevity and ellipses imply covenant-based restrictions, considered his authorities (including *Trombley* and *Celador*), and held that however sparse the contract, "the covenant claims must still identify conduct or injury beyond the pleaded breach and cannot contradict the terms that the parties did write."[10] The order dismissed the account-stated theory because the counterclaim pleaded a payment dispute, not an agreed balance or a promise to pay. It preserved the reasonable-value and unjust-enrichment theories as alternative claims. It

---

[7] Opp'n – ECF No. 93 at 16 (asking only that the motion be denied); Am. Answer (Whitney) – ECF No. 89 at 29–35 (Tenth and Twelfth through Fifteenth Affirmative Defenses, citing FACC ¶ 78(A)–(D)); Reply – ECF No. 96 at 17–19.

[8] Order – ECF No. 71 at 2–3; FACC – ECF No. 74 at 2–8 (¶¶ 6–52).

[9] Order – ECF No. 71 at 5–6.

[10] *Id.* at 6 & n.21.

dismissed the declaratory-relief claim with prejudice, noting that Whitney's contentions about post-termination site responsibility remain available "as defenses."[11]

**2. The Amended Counterclaims**

Whitney timely filed his First Amended Counterclaim.[12] Claim two now incorporates all prior paragraphs "except for [the] first sentence of paragraph 75," the sentence listing claim one's breaches.[13] The surrounding allegations remain: paragraph 73 pleads that the signed Construction Agreement carried implied-in-fact terms, "inherent in the express terms," including that "the owners would not terminate the contract without major default and after opportunity to cure." Paragraph 75 itemizes claim one's damages (among them a "20% markup due on $154,259 (termination damages)" and "Add $3200 for Rebar Cost charge after Termination") for a "Total Due from Owners for Breach of Contract/Termination Damages: $43,946.72."[14] Paragraph 78 pleads the four new theories of covenant breach: the termination without fair notice to cure (sub-part (A)), the encroachment permit (sub-part (B)), the ignored site-security warnings, denied access, and replacement rebar fabricator (sub-part (C)), and the fixed-price interpretation (sub-part (D)).[15] Paragraph 79 claims $43,946.72 "in principal" for sub-parts (A) through (D) collectively. Whitney acknowledges that "the same $43,946 is alleged as damages for each count."[16]

Two sets of the amended pleading's allegations matter to the encroachment-permit theory. First, Whitney pleads the permit timeline: he learned during the 2024–2025 plan check (before any construction contract existed) that no encroachment permit had issued. The Pedens signed and paid for Change Order #8 on February 5, 2025, compensating Whitney "for preparing a design in order to obtain an Encroachment permit." He drafted the three-sentence Construction Agreement

[11] *Id.* at 7–10.

[12] FACC – ECF No. 74; Order – ECF No. 71 at 10.

[13] FACC – ECF No. 74 at 12 (¶ 76); Opp'n – ECF No. 93 at 10 (quoting the paragraph).

[14] FACC – ECF No. 74 at 10–11 (¶¶ 73, 75).

[15] *Id.* at 12–14 (¶ 78(A)–(D)). The opposition refers to the sub-parts as "¶¶ 77(A)–(D)"; the FACC numbers them paragraph 78. *E.g.*, Opp'n – ECF No. 93 at 10–11.

[16] FACC – ECF No. 74 at 14 (¶ 79); Opp'n – ECF No. 93 at 11.

about three weeks later. Sub-part (B) itself alleges that the permit was "assumed and agreed" to be the Pedens' responsibility based on a statement made "[i]n late 2024," in which, Whitney pleads, Ms. Peden "misspoke."[17] Second, Whitney pleads that he first presented the Pedens with a form contract that addressed these subjects expressly: the "Contractor will obtain and pay for all required building permits," delays from permitting are excused, and the contractor has a ten-day right to cure. The Pedens did not sign it, and the Construction Agreement Whitney later drafted contains none of those terms.[18] Claim three is unchanged from the dismissed version: paragraph 81 repleads, word for word, a common count for "an account stated, at least in the sum of $59,075.54," and paragraph 82 repleads unjust enrichment of $43,946.72.[19]

The Pedens moved to dismiss the account-stated theory and claim two.[20] All parties consented to magistrate-judge jurisdiction.[21]

## LEGAL STANDARD

A pleading must contain a short and plain statement showing an entitlement to relief that gives the opposing party fair notice of the claim and its grounds. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court considers exhibits attached to the pleading, Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), need not accept allegations that the pleading's own exhibits or admissions contradict, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014);

---

[17] FACC – ECF No. 74 at 3–4 (¶¶ 15–18), 13 (¶ 78(B)); Reply – ECF No. 96 at 8, 13–14.

[18] FACC – ECF No. 74 at 4–6 (¶¶ 21–25, 39); Form Contract, Ex. 2 to FACC – ECF No. 74 at 21 (¶¶ 2–3, 15, 17); Construction Agreement, Ex. 3 to FACC – ECF No. 74 at 26–28; Reply – ECF No. 96 at 10–11.

[19] FACC – ECF No. 74 at 14–15 (¶¶ 81–82); Blackline, Ex. A to FACC – ECF No. 74 at 43–44 (no changes); Mot. – ECF No. 91 at 11.

[20] Mot. – ECF No. 91; *see* Opp'n – ECF No. 93; Reply – ECF No. 96; Answer to FACC – ECF No. 92 at 1–2 (citing Fed. R. Civ. P. 12(a)(4)(A)).

[21] Consents – ECF Nos. 7, 27, 65, 66; 28 U.S.C. § 636(c). The court can decide the motion without oral argument. Civil L.R. 7-1(b).

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), and may consider its own docket, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). If the court dismisses, leave to amend is freely given unless amendment would be futile, the pleader has repeatedly failed to cure identified defects, or amendment would cause undue delay or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). A failure to correct deficiencies that the court has already identified "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (cleaned up).

## ANALYSIS

### 1. The Account-Stated Theory (Claim Three) Is Dismissed with Prejudice

Whitney concedes the issue. He represents that he "only intended to re-plead" the reasonable-value, quantum-meruit, and unjust-enrichment theories, and that paragraph 81's phrase "as an account stated" was an "inadvertent inclusion" that "can be stricken."[22] The Pedens accept the concession.[23] The court already explained why the theory fails (the counterclaim pleads a payment dispute, not an agreed balance or a promise to pay) and the repleaded paragraph changes nothing, so the court need not reach the Pedens' further arguments.[24] The account-stated theory is dismissed with prejudice. With Whitney's consent, the court strikes the phrase "as an account stated" from paragraph 81. No amended pleading is necessary, and claim three proceeds on its reasonable-value and unjust-enrichment theories.

### 2. The Implied-Covenant Claim (Claim Two) Is Dismissed

#### 2.1 The Amended Claim Still Identifies No Distinct Frustrated Benefit or Injury

California implies a covenant of good faith and fair dealing in every contract to prevent one party from unfairly frustrating the other's right to receive the contract's benefits. *Guz v. Bechtel*

---

[22] Opp'n – ECF No. 93 at 6–7.

[23] Reply – ECF No. 96 at 6.

[24] Order – ECF No. 71 at 8–9; *see* Mot. – ECF No. 91 at 8–13 (the further arguments).

*Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). But the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50. And an implied-covenant claim that relies on the same alleged acts and seeks the same relief as a companion contract claim "may be disregarded as superfluous as no additional claim is actually stated," *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *Guz*, 24 Cal. 4th at 327 ("where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous"). Applying those rules, the prior order required Whitney to identify bad-faith conduct during performance that frustrated a contractual benefit distinct from the unpaid sums that claim one seeks.[25]

The amendment does not do that. Claim two still incorporates paragraph 73, which pleads the no-termination-without-cure obligation as a term of the contract, and the rest of paragraph 75, which computes the "Total Due from Owners for Breach of Contract/Termination Damages."[26] And the claim still seeks that total, $43,946.72, unallocated among the four sub-theories and identical to claim one's demand.[27] Whitney's description of the frustrated benefit confirms that claim is duplicative: the "contract bargain" was "being permitted by the owners to finish the retaining wall and vertical pier contract . . . and be paid the overall contract price." That is the benefit claim one already addresses.[28]

Whitney responds that identical damages do not defeat a covenant claim, citing *Trombley Enterprises, LLC v. Sauer, Inc.*, No. 5:17-cv-04568-EJD, 2019 WL 452044 (N.D. Cal. Feb. 5, 2019). The court considered *Trombley* last time and holds again that it does not change the result. The covenant claim in *Trombley* rested on conduct distinct from the pleaded breach: the contractor not only failed to approve the subcontractor's change orders (the contract breach) but allegedly promised during performance to approve them while intending not to, to induce extra work. *Id.* at

---

[25] Order – ECF No. 71 at 4–5, 7.

[26] FACC – ECF No. 74 at 10–12 (¶¶ 73, 75–76); Reply – ECF No. 96 at 7.

[27] FACC – ECF No. 74 at 11–12 (¶ 75), 14 (¶ 79); Opp'n – ECF No. 93 at 11 ("the same $43,946 is alleged as damages for each count").

[28] Opp'n – ECF No. 93 at 11.

United States District Court
Northern District of California

*5–6. The claim survived because the added misrepresentation allegations distinguished it, not because duplicative claims are permissible. *Rai Industrial Fabricators, LLC v. Federal Insurance Co.* is Whitney's other California-forum authority. The court there dismissed a covenant claim whose allegations formed part of the basis of the contract claim, and the repleaded claim survived only once it was tied to an express contract provision and alleged damages different from the contract damages. No. 5:16-cv-03674-EJD, 2018 WL 2047789, at *7 (N.D. Cal. May 2, 2018); 2018 WL 5296365, at *4 (N.D. Cal. Oct. 23, 2018). Whitney pleads no comparable conduct (no promise made during performance with no intent to perform) and no distinct damages. The closest candidate, the encroachment-permit statement, was allegedly made in late 2024, months before the parties contracted, and Whitney pleads that Ms. Peden "misspoke," a mistake, not the "conscious and deliberate" frustration of the contract that a covenant claim requires. *Careau*, 222 Cal. App. 3d at 1395.[29]

**2.2 Each Sub-Part Fails Independently**

**2.2.1 Sub-part (A): termination without notice to cure**

Sub-part (A) alleges that the Pedens breached the covenant "[i]n wrongfully terminating Whitney and the Construction Agreement . . . without fair notice to cure." This (word for word) is the termination that claim one pleads as a breach of contract.[30] Whitney pleads the cure obligation as an implied-in-fact term of the contract itself (paragraph 73), and his opposition concedes that the contract "has no termination clause" and that the cure obligation is "not expressed in the contract."[31] If the cure term is part of the contract, then terminating without cure is a breach of contract (claim one), and "a claim that merely realleges that breach as a violation of the covenant is superfluous." *Guz*, 24 Cal. 4th at 352; *see id.* at 348–52 (rejecting a covenant claim premised on termination "without a prior opportunity to improve"). *Daly v. United Healthcare Insurance Co.*,

---

[29] *Id.* at 8–9, 11–12, 14–15 (relying on *Trombley* and *Rai*); Order – ECF No. 71 at 6 n.21; Reply – ECF No. 96 at 7–9; FACC – ECF No. 74 at 3 (¶ 15) ("misspoke"); *id.* at 13 (¶ 78(B)).

[30] FACC – ECF No. 74 at 12–13 (¶ 78(A)); *compare id.* at 11 (¶ 75) ("wrongfully terminating Whitney and the Construction Agreement").

[31] *Id.* at 10–11 (¶ 73); Opp'n – ECF No. 93 at 10 (sub-part (A) "focuses on the lack of a reasonable notice to cure"), 12, 16.

Whitney's authority, applies the same rule: a covenant claim "based on the same breach" as the contract claim is superfluous, and the claim there survived only under *Guz*'s narrow exception for a termination used as "a mere pretext to cheat the worker out of another contract benefit" (under an agreement with an express termination clause conferring discretion, and on breaches distinct from the contract claim's). No. 10-CV-03032-LHK, 2010 WL 4510911, at *4–6 (N.D. Cal. Nov. 1, 2010); *Guz*, 24 Cal. 4th at 353 n.18. Whitney pleads no termination clause, no discretionary power, and no distinct benefit. The markup he alleges that he lost is part of claim one's damages itemization.[32]

**2.2.2 Sub-part (B): the encroachment permit**

Sub-part (B) alleges that the Pedens represented that they would secure the county encroachment permit (through their daughter's contractor), did not do so, and did not disclose the lapse, so that excavation drew a red tag and the project was delayed. Whitney concedes that the contract says nothing about the permit: "nothing in the express terms of the short, 3-sentence contract . . . mentions an encroachment permit, its necessity, or who was to secure it, owner or contractor."[33] On his own pleading, the theory fails in three ways.

First, the conduct is not performance conduct. The representation was made "[i]n late 2024" (before the parties signed the Construction Agreement on March 1, 2025), and the covenant implied in a contract does not reach statements made months before the contract existed. *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("There is no obligation to deal fairly or in good faith absent an existing contract.").

Second, the covenant cannot supply a permit term that the contract omits. *Guz*, 24 Cal. 4th at 349–50; *Witt v. Union Oil Co.*, 99 Cal. App. 3d 435, 441 (1979) ("A covenant will not be implied against express terms or to supply a term on a matter as to which the contract is intentionally silent.") (cleaned up). The omission here was no accident: Whitney drafted the Construction

---

[32] Opp'n – ECF No. 93 at 15–16 & n.4; Reply – ECF No. 96 at 12–13; FACC – ECF No. 74 at 12 (¶ 75) ("20% markup due on $154,259 (termination damages)").

[33] FACC – ECF No. 74 at 13 (¶ 78(B)); Opp'n – ECF No. 93 at 11; *see also id*. at 12 (the permit and cure obligations are "not expressed in the contract").



United States District Court
Northern District of California

Agreement, three weeks after the Pedens paid him under Change Order #8 to prepare the design "in order to obtain an Encroachment permit," and after they declined his form contract that allocated permits and cure rights expressly. A contractor who prepares the permit application plans, knows no permit has issued, and then drafts a contract silent on the subject cannot use the covenant to write in the term he left out. If the Pedens in fact agreed (orally or by conduct) to secure the permit, that is a contract term relevant to claim one, not a covenant theory.[34]

Whitney's owner-duty cases do not change the outcome because each rests on a premise his pleading negates: permit responsibility lay with the owner. In *Howard Contracting, Inc. v. G.A. MacDonald Construction Co.*, the city owned and designed the public project, "bore responsibility for obtaining the project permits," and failed to disclose known permit restrictions, so bidders could reasonably assume the permits were in hand. 71 Cal. App. 4th 38, 45, 50, 56 (1998). *D.A. Parrish & Sons v. County Sanitation District* involved a public owner that was contractually required to obtain the easements. 174 Cal. App. 2d 406, 410 (1959). And *Weber v. Milpitas County Water District* (written by Justice Tobriner, *Parrish*'s author) rejected the argument Whitney makes: an owner's duty to secure an encroachment permit "is not an 'implied condition' of the contract," and industry custom does not create the condition. 201 Cal. App. 2d 666, 671, 673–74 (1962). Whitney, by contrast, designed the project, prepared the encroachment-permit plans, and knew the permit's status before he contracted.

Third, sub-part (B) pleads no distinct injury: Whitney refers to "time impact damages" from the red tag, but paragraph 79 claims the same $43,946.72 in contract-termination damages.[35]

#### 2.2.3 Sub-part (C): site access and security after the termination

Sub-part (C) alleges that the Pedens did not heed Whitney's December 2 and 3, 2025 warnings to secure the open hillside cut, refused him site access after his termination, and hired a

---

[34] FACC – ECF No. 74 at 3–4 (¶¶ 15–18), 13 (¶ 78(B)); Form Contract, Ex. 2 to FACC – ECF No. 74 at 21 (¶¶ 2–3, 15, 17); Reply – ECF No. 96 at 10–11, 13–14.

[35] FACC – ECF No. 74 at 13 (¶ 78(B)) ("time impact damages"), 14 (¶ 79); Opp'n – ECF No. 93 at 9–10, 12–14 (the owner-duty cases); Reply – ECF No. 96 at 14–16.

United States District Court
Northern District of California

replacement rebar fabricator.[36] The conduct it describes is the termination that claim one already challenges and its aftermath. A covenant claim does not lie for conduct after the contract ended: the covenant supplements an existing contract's terms, and once the contractual relationship is over, there is no performance left for the covenant to protect. *Racine*, 11 Cal. App. 4th at 1032; *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990). Nor does sub-part (C) identify any contractual benefit of Whitney's that the post-termination conduct frustrated: securing the site protected the Pedens' own property, and the rebar-fabricator grievance is a line item of claim one's damages ("Add $3200 for Rebar Cost charge after Termination").[37] The prior order held that these contentions "remain available as defenses" to the Pedens' negligence claims. Whitney has so pleaded them, citing paragraph 78's sub-parts throughout the affirmative defenses of his amended answers.[38]

#### 2.2.4 Sub-part (D): the fixed price

Sub-part (D) alleges that the Pedens breached the covenant by "[i]nterpreting (and therefore repudiating)" the contract's fixed $175,200 price as covering only subcontractor work (not Whitney's own hours) and by accusing him of overbilling.[39] A disagreement over what an express term covers is a question of contract interpretation, and the covenant cannot convert it into a standalone claim. *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) (the agreement's express terms circumscribe the covenant's scope); *Careau*, 222 Cal. App. 3d at 1395. A repudiation is a breach of contract. *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975). And the underlying conduct (the Pedens' effort "to bypass Whitney's agreed 20% markup") is the same conduct the prior order held was claim one restated, and conduct (declining change orders) that the contract expressly permitted.[40]

---

[36] FACC – ECF No. 74 at 13–14 (¶ 78(C)); *id.* at 8 (¶ 52) (termination on December 3, 2025).

[37] *Id.* at 11–12 (¶ 75).

[38] Order – ECF No. 71 at 9–10; Am. Answer (Whitney) – ECF No. 89 at 29–35 (Tenth and Twelfth through Fifteenth Affirmative Defenses); Am. Answer (Whitney Homes) – ECF No. 90 at 30, 32–36 (same); Reply – ECF No. 96 at 16–17 (the Fifth, Seventh, and Ninth defenses cite ¶ 78(C)).

[39] FACC – ECF No. 74 at 14 (¶ 78(D)).

[40] Order – ECF No. 71 at 5–6; FACC – ECF No. 74 at 11–12 (¶ 75); Reply – ECF No. 96 at 17.

United States District Court
Northern District of California

### 2.3 Whitney's Remaining Authorities Do Not Change the Result

Whitney cites other authority that is not California law. *Metcalf*, *Precision Pine*, *Mansoor*, *Baistar*, *Firemans Fund*, *MW Builders*, *ASI Constructors*, and *Iron Bow* apply the federal common law of government contracts. *Miller v. Guimaraes* applies Connecticut law. 78 Conn. App. 760 (2003). *Sechrest* and *Stabile* apply Massachusetts law. *Sechrest v. Safiol*, 383 Mass. 568 (1981); *Stabile v. McCarthy,* 336 Mass. 399 (1957). California law governs this state-law counterclaim, and on the covenant's scope, *Guz* controls. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001).[41] The cases do not help Whitney in any event. *Iron Bow* reaffirms that a good-faith claim is redundant "when a breach of contract claim, based upon the same facts, is also pled," and the claim there protected an express, bargained-for option term. *Iron Bow Techs., LLC v. United States*, No. 25-436, 2026 WL 2207784, at *2, *20 (Fed. Cl. July 29, 2026) (cleaned up). *MW Builders, Inc. v. United States* found that the parties' contract itself placed the utility obligation on the government. 134 Fed. Cl. 469, 499–501 (2017). And in *Miller*, the contract required the contractor to obtain the permits, like Whitney's form contract here. 78 Conn. App. at 773–74. The decisions do not permit a California covenant claim that restates the contract claim, supplies omitted terms, or polices post-contract conduct.

## 3. The Dismissal of Claim Two Is with Prejudice

Leave to amend is freely given, but not when amendment would be futile or the pleader has already failed to cure identified defects. *Foman*, 371 U.S. at 182; *Zucco*, 552 F.3d at 1007; *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (affirming dismissal with prejudice where the amended complaint failed to remedy identified deficiencies); *Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014) (same, where the amendment "essentially re-pled the same facts and legal theories") (cleaned up).

---

[41] Opp'n – ECF No. 93 at 7–10, 12–16 & nn.2–3 (collecting cases).

The prior order identified the defects, stated what a viable claim required, and identified counsel's representation that Whitney would plead additional conduct supporting the claim.[42] The amendment instead divided the same grievances into four sub-theories, attached the identical $43,946.72 to all of them, and pleaded facts (the pre-contract timing of the permit statement, Change Order #8, the unsigned form contract, the December 3 termination) that defeat the theories as a matter of law. The opposition does not identify any fact Whitney could add.[43] Dismissal with prejudice also does not deny Whitney a remedy. The unpaid sums are claim one, which the Pedens have not challenged and have answered. The quasi-contract theories survive in claim three. The cure, permit, site-protection, and pricing contentions are pleaded as affirmative defenses in Whitney's amended answers, where they belong. The court dismisses claim two with prejudice.[44]

## CONCLUSION

The court grants the motion. Claim three's account-stated theory is dismissed with prejudice, and the phrase "as an account stated" is stricken from paragraph 81 of the First Amended Counterclaim. Whitney does not need to file an amended pleading to conform to this ruling. Claim three survives on its reasonable-value and unjust-enrichment theories. Claim two, for breach of the implied covenant of good faith and fair dealing, is dismissed with prejudice. Claim one is unaffected. Because the Pedens have already answered the surviving portions of the First Amended Counterclaim, no further responsive pleading is required.[45]

This resolves ECF No. 91.

**IT IS SO ORDERED.**

Dated: November 5, 2026

LAUREL BEELER
United States Magistrate Judge

[42] Order – ECF No. 71 at 5–7 & n.21, 10.

[43] Opp'n – ECF No. 93 at 16; Reply – ECF No. 96 at 18.

[44] Answer to FACC – ECF No. 92 at 1–2; Am. Answer (Whitney) – ECF No. 89 at 29–35; *see supra* section 2.2.3.

[45] Answer to FACC – ECF No. 92 at 1–2 (answering the factual allegations, claim one, and claim three's reasonable-value and unjust-enrichment portions under Rule 12(a)(4)(A)).